## SUPREME COURT.

### PERKINS AND BROWN agt. WARREN.

Where, during the pendency of an action, it shall appear by affidavit, that the defendant threatens, or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be issued, under the last clause of section 219 of the Code, to restrain such removal or disposition.

But such remedy by injunction is only applicable where the act is threatened, or is about to be done, and not when it has been done.

Nor is a plaintiff entitled to an injunction in such case, unless he establishes an equitable ground for interference, by showing that he is a creditor, or that he will be injured by the threatened fraudulent transfer.

An injunction ought not to be issued on such an application, where the plaintiff's demand is denied on oath by the defendant, and is unsupported by any evidence, and there is no proof that the plaintiff has any interest in restraining the defendant.

Where the legal right of the plaintiff is denied by affidavit as broadly as it is asserted, the application stands upon the same ground and should be governed by the same rule, as where the whole equity of a complaint is denied by the answer.

*Albany General Term, December* 1851—*Before Justices* HARRIS, PARKER and WRIGHT. This was an appeal from an order of Justice HARRIS, allowing an injunction.

The action was commenced in December 1850, to recover a balance of between four and five thousand dollars, which the plaintiffs claimed to be due them for cash advances made to the defendant. The cause being at issue, was referred to a referee, before whom the trial was commenced on the first day of October at 3 o'clock P. M. The trial, after proceeding several days, was adjourned to the 9th day of December following. It is alleged in the affidavit upon which this motion was founded, that the defendant had, " by several orders staying plaintiff's proceedings for commissions not executed, and otherwise, succeeded in delaying the proceedings for a great length of time, and for the purpose, as it was believed, of making a fraudulent disposition of his property, to defeat the collection of the judgment to which the plaintiffs were entitled, that the last order staying the plain-

Perkins and Brown agt. Warren.

tiff's proceedings was vacated on a motion made in the defend-
ant's presence, when one of the plaintiffs, in an affidavit, charged
that object upon the defendant.

It also appeared by the affidavit of James N. Halsted, a justice
of the peace residing in the same town with the defendant, that
on the morning of the day on which the trial was to commence,
he was requested to go to the house of the defendant, and, upon
his arrival there, he found the defendant and one Perry Warren,
his cousin, and a deed from the defendant and his wife to Perry
Warren, was then executed and acknowledged. Also a bill of
sale of the defendant's personal property. The deed conveyed
the farm upon which the defendant resided. Another deed was
also executed and acknowledged conveying a farm lying in an
adjoining town. The quantity of land conveyed was about 538
acres. At the same time, notes were executed by Perry Warren
to the defendant, payable at different times, and amounting in
the aggregate to about $13,000, being the price of the real
and personal estate so conveyed.

Upon affidavits showing these facts, an order was made re-
quiring the defendant to show cause why an injunction should
not issue, restraining the defendant from removing or disposing
of or conveying away his property; and in the mean time re-
straining such removal or disposition.

In opposition to the motion, the affidavit of the defendant was
read, stating that the conveyance of his property to Perry War-
ren had no reference to the suit pending between him and the
plaintiffs; that the sole reason of his making the sale was his ill
health and his consequent inability to superintend and carry on
the business. It further appeared that the defendant had for the
last two years offered his farm for sale, and had on one occasion
been in negotiation with a purchaser for such sale. The de-
fendant also stated that he still owned 250 acres of good farming
land, worth between seven and eight thousand dollars; and be-
sides this he had property free and clear of all incumbrances, and
above all debts and liabilities, more than sufficient to pay and
satisfy any judgment which the plaintiffs could by possibility re-
cover against him.

On these facts, and others appearing in the opinion of the

Perkins and Brown agt. Warren.

court, Justice HARRIS allowed an injunction, and gave the following reasons:

HARRIS, Justice.—No more radical change has been made by the Code than that contemplated by the single clause in the 219th section, upon which this application is founded. This provision was first adopted in the amended Code of 1849, and was no doubt intended as a substitute for proceedings in similar cases, under the " act to abolish imprisonment for debt."

The only question is, whether the plaintiffs have made a case which entitles them to the injunction for which this statute provides? Does it appear that the defendant threatens, or is about to remove or dispose of his property with intent to defraud his creditors? The principal facts from which it is insisted that such fraudulent intent is to be inferred are, that the defendant, being the owner of two farms in the county in which he resides, on the morning of the day on which the trial of an action, in which the plaintiffs sought to recover a judgment against him for several thousand dollars, was to commence, and after such trial had been delayed for several months, at least, conveyed to his relative both farms and all his personal property, liable to execution, without receiving any payment therefor, or any security, except the promissory notes of the purchaser, payable at future periods. Such a transaction is certainly unusual. The fact that so large an amount of property passed out of the defendant's hands into the hands of his cousin just upon the eve of the trial of this action, excites the irresistible suspicion that the transfer had some reference to the result of such trial. And then, when it further appears that the defendant received no part of the purchase money, and that no securities were executed therefor, except the notes of the purchaser, and those payable at remote periods, it is difficult to believe that the defendant had no other object in view than an ordinary sale of his property. Nor do I think these circumstances, tending, as they do so strongly, to establish a fraudulent intent, are satisfactorily explained by the defendant. He states, it is true, that for several years he had been desirous of selling his farm, and that this was publicly known; but then he does not state, what would have been a very material circumstance in

making out the good faith of this singular transaction, that Perry Warren had been desirous of purchasing all or any of his property, or that any negotiation had ever been had in relation thereto. It does not appear that the sale was ever mentioned or thought of by either the defendant or Perry Warren, until the very day the transfer was made, when the defendant had some reason at least to apprehend that a judgment for a very serious amount was impending over him. Upon the whole, I think the case, as it is presented by the affidavits before me, abundantly justifies the conclusion that it is the purpose of the defendant so to dispose of his property as to place it beyond the reach of the plaintiffs. It is, therefore, a proper case for the injunction for which the statute provides.

It was contended by the defendant's counsel that the injunction, if allowed, should only restrain the defendant from removing or disposing of his property *fraudulently*. Such an injunction would, in my judgment, be simply absurd. It would be saying to the defendant, in effect, " you may remove or dispose of your property, as the plaintiffs apprehend you will, so as to place it beyond their reach, when they obtain judgment; all that is enjoined upon you is, that you do it with honest motives." The act is not restrained, but the fraudulent intent. Such an injunction would be of no practical effect, and I am sure was never intended by the legislature. I think the preliminary injunction already allowed should be continued until the further order of the court.

The defendant thereupon appealed to the general term.

J. WHIPPLE JENKINS, *for Plaintiffs.*
W. A. BEACH, *for Defendant.*

By the Court, PARKER, Justice.—The injunction order appealed from enjoined and restrained the defendant Henry Warren, his agents and attorneys, from removing, or in any way or manner disposing of any of the property, real or personal, of said defendant, and particularly from transferring or disposing of any due bills or promissory notes given by one Perry Warren to said defendant, on or about the first day of October 1851, until the further order of the court or of the justice making such order.

Perkins and Brown agt. Warren.

This action was brought to recover an alleged balance of an account, amounting to between four and five thousand dollars. The claim thus made by the plaintiffs was denied by the defendant, who insisted that there was a balance due to him from the plaintiffs of between two and three thousand dollars. The cause had been referred to a referee and was pending before him at the time the order appealed from was made.

The order was made on proof by affidavit, that on the first day of October 1851, and since the commencement of this suit, the defendant sold and conveyed to his cousin, Perry Warren, real and personal property, to the amount of 13,000 dollars, for which he took the notes of the said Perry Warren. The motion was heard on affidavits after an order to show cause. It was claimed that the transfer of property complained of was made to defraud creditors. The plaintiff Brown made affidavit that he had entire confidence that the plaintiffs would recover judgment against the defendant for the amount claimed. It was shown that in the progress of the cause the defendant had obtained several orders for commissions not executed, and otherwise, which it was alleged were for the purpose of delay, and of giving defendant an opportunity to dispose of said property. In answer to the motion the defendant made affidavit that he believed he had a good defence on the merits; that the claim made in this cause by the plaintiffs was wholly unfounded and unjust, and that he had entire confidence that he should be able to recover against the plaintiffs between three and four thousand dollars; and the defendant also denied that he had obtained any orders for the purpose of delay; that the transfer complained of had no possible reference to the claim made by plaintiffs, or to the possibility of their recovering a judgment against him; that in consequence of ill health, by reason of which he had been unable to work the farm, he had intended to sell it ever since 1846; and that he still owned 250 acres of good farming lands worth between seven and eight thousand dollars, and was worth over and above said lands, and free and clear from all incumbrances and above all debts and liabilities, more than enough to pay and satisfy any judgment the plaintiffs might by possibility recover against him. The defendant further showed by the affidavit of a third person, that defendant had fre-

quently offered his property for sale during the last two years, and that the property was sold to Perry Warren for a fair and adequate consideration, and that Perry Warren was believed and reputed to be wealthy and entirely responsible for the money agreed to be paid for the property bought by him, independent of the property so purchased.

The power to make the order appealed from is claimed to have been conferred by the last clause of section 219 of the Code, in the following words: " And where, during the pendency of an action, it shall appear by affidavit that the defendant threatens, or is about to remove or dispose of his property with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition."

The order appealed from is as broad in its operation, if not as full and particular in its language, as an injunction granted on a creditor's bill under the practice of the late Court of Chancery, or an order made in proceedings supplementary to execution under the last clause of section 298 of the Code. Such an order could not be made under the late chancery practice, and can not be made now, under the section last cited, until the plaintiff shall not only have established his demand by obtaining judgment, but shall also have attempted, unsuccessfully, to collect it on execution.

It is a most important question of practice to inquire, whether under the last clause of section 219 of the Code above cited, an injunction may now be obtained during the pendency of the action, that shall stop every business transaction of the defendant, and paralyze his power over his property, whenever a plaintiff shall succeed in satisfying a justice of this court or a judge of the county court, that some transfer of property made by the defendant was so made with the intent to defraud creditors. If this can now be done, it is not only a new practice, but one most destructive to the business of a defendant. Such an interference, if it could be permitted on a mere *claim* of indebtedness, would be greatly prejudicial to the commercial interests of the community. It has long been regarded as a cardinal principle, that the legal right of the plaintiff must be established before he can call to his aid the extraordinary power of a court of equity; and

Perkins and Brown agt. Warren.

a writ of injunction could never be granted, where there was doubt about the legal right. The law was still more careful in protecting a defendant from interference by an injunction that would suspend all his business operations; for in addition to establishing the legal right by the recovery of a judgment, it required the plaintiff first to make the attempt to collect his demand by execution.

If the law is now changed so as to permit an injunction like this to issue *pendente lite,* then our practice presents this extraordinary feature, that the same remedy may now be had on application before judgment, as on application after judgment and execution returned unsatisfied. The facts to be set forth would be somewhat different; as, in the former case, it would be necessary to show an intent to defraud, but the remedy would in both cases be the same.

In giving effect to the section under which this extraordinary power is claimed, we ought to be limited by the language employed. We should exercise no power not expressly conferred. The language of BRONSON, J., in speaking of a less summary statute, the non imprisonment act, in The People vs. The Recorder of Albany (6 *Hill,* 432), is fully applicable here. He said "the more I see of these summary proceedings, the more fully I am convinced they should be carefully watched. They will otherwise be turned into the means of oppression."

The statute (*Code, § 219*) only authorises a temporary injunction where it shall appear by affidavit that the defendant *threatens, or is about to remove* or dispose of his property with intent to defraud his creditors: and then the injunction can only restrain "such removal or disposition," that is to say, the removal or disposition threatened, or about to be made. If it be a threat to remove property generally, the injunction may perhaps, there being no other objection, be as general as the threat. But, I am inclined to think, the statute was only intended to prevent the consummation of some particular act, which the defendant threatens or is about to do, rather than to restrain generally the sale or disposition of property, and thus tie up all the business concerns of the defendant, pending a litigation.

But it is only when the act is threatened, or about to be done,

and not when it has been done, that this court is authorized to interfere during the pendency of an action. The remedy given is preventive merely. The facts disclosed by the affidavits did not bring this case within the terms of the act. Here the property had been sold and conveyed, and there was no proof whatever that the defendant threatened, or was about to remove or dispose of the notes he had received for the property.

I think it is a mistake to suppose that this provision authorizing a temporary injunction was intended as a substitute for proceedings under the act "to abolish imprisonment for debt." The provisions of that act are still unrepealed and in full force (*Code*, § 471). The transaction complained of, if made with the intent to defraud creditors, might fall within the provisions of that act, (section 4, subdivision 3, 2 *R. S. 3d ed.* 107), which authorizes a warrant to be issued where it is shown that the defendant *has assigned, removed or disposed of*, or is about to dispose of any of his property with intent to defraud his creditors. The provisions are entirely unlike and with good reason. Under the non imprisonment law the defendant may be arrested to answer for a past transaction. If the allegation made against him is controverted, a trial takes place on legal evidence; and if convicted of the fraudulent act charged, the defendant is to be punished by imprisonment. Under the section of the Code in question, the court has no power to punish for an act already committed: it can only prevent the commission of threatened or apprehended fraudulent acts. I think the provision of the statute authorizing an injunction, inapplicable to the facts shown by the affidavits.

A reasonable construction must be given to the clause in question. The language is general. "Where during the pendency of an action, it shall appear," &c. It certainly can not be supposed that this remedy by injunction may be granted in every action that may be brought. There may be cases in which the plaintiff will have no interest in thus enjoining the defendant. Suppose, for instance, an action to compel a specific performance, or an action to redeem; a fraudulent transfer of property not involved in the litigation, would give no reason for interference by injunction. I think all that was intended by the legislature in using such general language, was to make the statute broad

Perkins and Brown agt. Warren.

enough to cover every case where there may be an equitable ground for interference.

If this is the correct view of the statute, there is no reason for supposing that the legislature intended to give such a remedy by injunction, when the legal right of the plaintiff was controverted and denied upon oath. In this case the plaintiff swears to a balance due him from the defendant of between four and five thousand dollars. This was enough, *prima facie*, to establish his right. But on showing cause, the defendant denied this demand on oath, and claimed a balance due him from the plaintiffs of between two and three thousand dollars. The legal right of the plaintiff was thus denied as broadly as it was asserted; and there was no more reason to suppose a balance due from the defendant than from the plaintiffs. The defendant, in my opinion, had just as good a right to watch over the transactions of the plaintiffs as they had to question those of the defendant. Under such circumstances, I think, an injunction should have been refused, even if the affidavits had made out a case of apprehended fraudulent transfer. The plaintiff's demand being denied on oath, and not being supported by any evidence, there was no proof that he had any interest in restraining the defendant. It was like the well settled equity practice, by which an injunction is dissolved, if the whole equity of the complaint is denied by the answer.

I think the defendant put at issue the whole equity of the application by denying on oath the existence of any demand in favor of the plaintiffs against him. He denied also the fraudulent intent. I admit that a mere denial of a fraudulent intent can not avail a defendant where the facts established authorize a legal inference that the intent was fraudulent. But in this case facts were set forth by the defendant, going to show the improbability of such intent. The entire solvency of the defendant, and the fact that the defendant was still the owner of real estate worth between seven and eight thousand dollars, were also shown in answer to the application.

But without deciding whether there was sufficient evidence of a fraudulent intent, I think, for the reasons above set forth, that the learned justice erred in granting the order appealed from and that it should be reversed, with $10 costs.