## THE MAYOR, &c., OF THE CITY OF NEW YORK a. CONOVER.

*Supreme Court, First District; Special Term, July,* 1857.

INJUNCTION.—APPREHENDED TRESPASS.—TITLE TO OFFICE.—POWERS OF JUDGES.

An injunction to restrain an apprehended trespass is never allowed, except under very special circumstances.

A preliminary injunction, the effect of which will be in effect to oust a party, although only temporarily, from the exercise of the functions of an office, by preventing his access to the books and papers appertaining to it,—should not be granted.

The issuing of such an injunction is not a matter of strict right, but of judicial discretion; and, therefore, the previous determination of any of the questions raised on the application for the injunction, made by an officer of co-equal powers with him from whom the injunction is asked,—although made in a special proceeding and even nominally between other parties,—should, if made upon a full hearing, be treated as nearly conclusive of those questions on the motion for the injunction.

An injunction should not be granted at the suit of a municipal corporation to restrain one claiming to hold an office in the corporation from taking possession of the books and papers appertaining to the office, where the complaint merely shows that the books are the property of the corporation; that the corporation deny the validity of defendant's claim to the office, and support the title of a rival claimant; and that defendant is prosecuting legal proceedings to obtain possession of the books and papers.

The question of title to a public office cannot be indirectly tried in an injunction suit brought to restrain a claimant of such office from interfering with the books and papers appertaining thereto.

The only proper proceeding for trying the title to an office is the action in the nature of *quo warranto,* brought by the people of the State.

An injunction should not be granted, to conflict with the orderly conduct of a
special proceeding previously and lawfully commenced, before another judge of
the court in which the injunction is asked for ;—but the party should be left to
procure a review of the proceedings by the regular process of certiorari.

Application for a permanent injunction.

A vacancy having occurred in the office of street commis-
sioner of the city of New York, one Daniel D. Conover was ap-
pointed to fill the same by the governor of the State; and
shortly afterwards one Charles Devlin was appointed to the same
office by the mayor of the city, with the consent of the Board of
Aldermen.

The books and papers appertaining to the office of street com-
missioner being in possession of Devlin, Conover made applica-
tion to Mr. Justice Peabody of the Supreme Court (under 1
*Rev. Stats.*, 125, § 56) for an order for the delivery of them to
himself. The proceedings upon this motion (which was granted)
are reported Ante 73.

Pending the decision of this application the complaint in the
present action was filed, on behalf of the mayor, aldermen, and
commonalty of the city of New York, against Conover. It
averred that the books and papers referred to were the private
property of the corporation of the city, and showed that defend-
ant was intending and threatening to interfere with the use of
them by the city authorities; and prayed that defendant might
be enjoined from carrying into effect such purpose.

On this complaint, and on affidavits, a motion was now made
in behalf of the plaintiffs, upon notice, for a permanent injunc-
tion.

By a supplementary affidavit, read on the hearing, Mr. Justice
Peabody's decision, granting an order for the delivery of the
books, was shown.

*Richard Busteed*, corporation counsel, for the motion.—I. The
complaint states good cause for granting an injunction. 1. The
rules of equity applicable to restraining a mere trespass capable
of being redressed by pecuniary damages do not affect a case
like this, where the removal of the property from the possession
of the plaintiffs would produce injury for which no adequate
compensation in damages could possibly be made. (*Story's Eq.*

*Jur.,* §§ 928–9 ; Stevens *v.* Beekman, 1 *Johns. Ch. R.,* 318 ; Livingston *v.* Livingston, 6 *Ib.,* 497 ; The New York Printing & Dyeing Establishment *v.* Fitch, 1 *Paige,* 97 ; Douglass *v.* Wiggins, 1 *Johns. Ch. R.,* 435 ; Varick *v.* The Corporation of New York, 4 *Ib.,* 53 ; The Hudson & Delaware Canal Company *v.* The New York & Erie Company, 9 *Paige,* 323.) 2. The defendant does not deny that he means to obtain the books, &c., in question, if possible. On the contrary, he expressly alleges a right to them, and an intention to procure them in virtue of such right.

II. The pendency of the application before Judge Peabody does not impair the right of the plaintiffs in this action. 1. That proceeding is a contest between two claimants of an office for such possession of the books, &c., belonging to it as either of them may be entitled to have. Confessedly the *title* to the office cannot be settled in that proceeding. 2. However the learned judge may decide that matter, the adjudication cannot affect the rights of the plaintiffs, who were not parties to the proceeding. 3. The books, &c., in question *are* the property of the plaintiffs. They are public records only in the sense of their being by law subject to the inspection of the public at certain times and for certain purposes, but the title to them, subject to such use, is in the plaintiffs.

III. The appointment of defendant to be street commissioner of the city of New York is invalid ; and were it valid the affidavits show that he has never complied with the requisites essential to invest him with the office.

IV. An injunction is an appropriate remedy under the circumstances developed in this case. (The Croton Turnpike Company *v.* Ryder, 1 *Johns. Ch. R.,* 611 ; Delafield *v.* The State of Illinois, 26 *Wend.,* 192 ; The Attorney-General *v.* The Cohoes Company, 6 *Paige,* 133 ; The Auburn & Cato Plank-Road Company *v.* Douglass, 12 *Barb.,* 553.)

*Daniel E. Sickles,* on the same side.—I. The jurisdiction of Mr. Justice Peabody under Revised Statutes, 125, is precisely similar to that jurisdiction over actions where the title to land may come in question, exercised by justices of the peace. If the claimant is in actual possession of the office, and is officer *de facto,* he may have process for delivery to himself of papers held

by one who is neither in the office nor a claimant of it. If title to the office comes in question at all, the jurisdiction ceases *ipso facto* (*Cow. Just.*, 35, *note Q ; Ib.* 41–43 ; *Ib.*, 464–469). It is quite manifest, therefore, that Justice Peabody is without jurisdiction, and that he ought to dismiss the application.

II. In all cases of specific chattels where it is probable that adequate compensation by way of damages would not be given by a jury, equity exercises jurisdiction both preventive and remedial (*Jer. Eq. Jur.*, *pt.* 2, *ch.* 4, § 2 ; *Story's Eq. Jur.*, §§ 703, 709, 710, 906 ; *Waterman's Eden on Inj.*, 367, 368, *and note.*)

*William Curtis Noyes*, opposed.—I. The complaint proceeds upon the ground that there is an interruption and disturbance of the plaintiff's possession of the books and papers of the street commissioner's office, which books and papers, it is alleged, belong to the corporation of the city of New York; and it seeks to restrain the defendant, whom we must regard now as *de facto* street commissioner, in possession rightfully of the franchise, from the use of these books and papers on the ground of such supposed disturbance and interruption of their possession. That claim must fail, because the possession of the street commissioner, the defendant, whether so *de facto* or *de jure*, is the possession of the plaintiffs, his possession being theirs *sub modo*. He does not possess the books as Daniel D. Conover, but by virtue of his office as street commissioner, their temporary custody being his for the purpose of his office and for public uses, but the title and ownership being ultimately in the plaintiffs.

II. The law, by virtue of the office which the defendant exercises, gives him the possession for public uses of the books, papers, &c., as necessary for exercising the duties of his office, and as a means to the great end of discharging the public burdens ; but the same law does not allow or authorize the corporation of the city of New York, for whom in part and for the people to the fullest extent these functions are discharged, to wrest the papers from him upon the ground that his use of them for public purposes in the discharge of his duties, is a disturbance or interruption of their possession.

III. The statute has declared that the custody of the books and papers, no matter on whom the ultimate title exists, shall be given to the incumbent of the office for the time being, so that

for the time being the duties of the office shall not remain undischarged, and the public suffer injury in consequence.

IV. A judicial determination has been pronounced by a judge of this court, after a most careful and deliberate investigation and argument, upon the question as to who is street commissioner, that the custody of these books rests in the defendant as street commissioner *de facto*.

V. The court, practically, is called upon by injunction to forbid the defendant from taking these books (to which it has been decided that he has a right), thus preventing him from exercising the duties of his office, not pending a *quo warranto* to try the title where his right is directly impugned, but in an incidental summary proceeding.

ROOSEVELT, J.—It is proper in the outset of the present decision to correct a very natural and very prevalent misconception as to the state of the controversy. The question whether Mr. Conover or Mr. Devlin shall be street commissioner of the city of New York, is not now pending in three different modes of procedure, or in any mode before three separate judges, or before any judge of the Supreme Court or of any court. Neither of the three proceedings referred to is adapted to the trial or determination of the *title* to the office. An action, as it is now denominated, of *quo warranto* by the attorney-general, in the name of the State, is the only recognized mode of settling that issue. No such action has yet been commenced. The contest, thus far, has been confined to the question of immediate, but temporary *possession*—a question, however, which it must be admitted (and as the recent history of the court itself has shown), may be of very serious consequence to the respective claimants. For should the usual and almost unavoidable delays attending the prosecution of regular formal actions be interposed or occur in this, as in most other instances, the immediate possession and exercise of the powers of the office, although commenced as temporary, may be continued till the full legal end of the term. Hence the determined struggle and the various phases it has assumed.

The proceeding before Mr. Justice Peabody was not a proceeding in court, nor before a judge sitting as a court. It was instituted under a special statute, giving a special power to cer-

tain designated functionaries, including county judges, in cases of death or removal from office, to compel by warrant in a summary manner, the delivery over to the "successor" of the previous incumbent " of the books and papers appertaining to such office." The corporation of the city, unless Mr. Devlin can be considered as legally representing them, were no parties to the proceeding. The order to show cause was not addressed to the corporation, but to Mr. Devlin. Technically speaking, he, and he alone, was heard; and he alone (as it seems he actually has done) could, by writ of certiorari, appeal from the order made against him—not, however, to another judge of the court, but to the court itself, sitting as, and with all the powers and attributes of, a court of general jurisdiction. For these reasons, no doubt, the corporation was supposed by their counsel to have had a right to institute in their own name, as they have done, an independent action against Mr. Conover, complaining of an alleged threatened interference on his part with their property,—to wit, the books and papers relating to the streets of the city—and praying, as the only relief needed, that the defendant may, by the final decree of the court, be perpetually enjoined from ever carrying into effect his alleged purpose. And the question now presented is, can such a bill, under any evidence, or admitting all its allegations, be ultimately sustained; for, if it cannot, then the preliminary order which has been asked for, on the *ex parte* affidavits presented by both sides, and which is merely an auxiliary to the final relief, must of course be denied (*Code*, § 219).

The office of street commissioner, before the regular expiration of its legal term, became vacant by death. Two claimants, as already stated, insist upon filling the vacancy; one deriving his title of "successor" from the great seal of the State, the other from the comparatively lesser, but, as it would seem, more appropriate seal of the city. The former (Mr. Conover), it is said, first obtained the possession; the latter (Mr. Devlin), although subsequent in time, has seized, it is also said, and maintained it since.

As to the ultimate right, each has a fair color of title. The one shows a decision of the chief magistrate of the State; the other of the chief magistrate of the city. Claims thus endorsed cannot on either side be treated as frivolous or *mala fide*. The Constitution, it is true, declares that officers of a city, where not

chosen by the electors of such city, shall be appointed by the "authorities thereof." And this spirit of decentralization is confessedly the spirit of the whole instrument. But the Court of Appeals have recently, in effect, laid down the rule that the spirit of the Constitution is not to be the guide of the courts— that it is not for the courts "to create exceptions or restraints on the Legislature which are not fairly contained in the Constitution *as it is written*." Under such a rule of construction, propounded by the highest judicial authority of the State, I am bound to regard the commission of the governor, given pursuant to an act of the Legislature, although the office is purely local, as certainly creating at least color of title. The Legislature (*Laws of* 1849) have given him the power to fill vacancies whenever they shall occur, not only in State offices proper, such as those of attorney-general and treasurer, but "in any of the offices of this State." And the Constitution, it must be admitted, contains on this point no express exception. It declares, in broad, general terms that "the Legislature shall provide for filling vacancies in office." It is unnecessary—and, indeed, it would be improper— on a mere application for a preliminary injunction, to weigh minutely and critically the arguments in support of the pretensions of the respective claimants. It is enough that a case be made of good faith and fair color of title. At the same time, I should say, in justice to Mr. Devlin, that his claims in some degree rest on a statute of the State more recent than that of 1849, which provides that the street commissioner of the city "shall be appointed by the Mayor, with the advice and consent of the Board of Aldermen."

To determine, however, this question of "the mere right," a proceeding, as already stated, in the nature of a *quo warranto*, is the appropriate method. Such a proceeding will, no doubt, soon be instituted; and the only question is,—Which of the two rival claimants shall in the meanwhile have the advantage of present possession?

Conover, it appears, was first in order of appointment. His commission bears date several days before that of Mr. Devlin. He first, he says, entered upon the duties of the office; although he impliedly admits that Devlin first obtained possession of the books.

What constitutes possession of an office—which of course

means something different from a mere room or apartment—may be at times a difficult problem to solve.   One of my colleagues in another form of proceeding has had it before him, for several days, in this very case.   His published decision, and the reasonings with which it was accompanied, sufficiently show the embarrassing nature of the question.   Shall I, then, on a mere interlocutory motion, not affecting the ultimate right, and addressed to the discretion of the court, open the inquiry afresh ? I may well say, in such a case, *infandum jubes renovare dolorem ?*   The public peace, besides, as it seems to me, requires that I should not disturb the course of that decision.   It was made by an officer of co-equal powers, and affects only the temporary possession.   To treat the execution of it as a threatened trespass to be prevented by immediate injunction, issued on mere affidavits before a final hearing, would be sure to lead to disorder, and would be entirely at variance with the deference due from one judicial functionary to another; especially where both are of equal grade, and both members of the same tribunal.

In addition to these considerations, it is proper to state that preliminary injunctions, in cases of threatened trespass to personal property, are seldom, if ever, allowed.   The plaintiffs being, as they allege, in possession, can defend themselves, in the ordinary course of law, against any illegal disturbance. They can resort, if they are right, to the criminal magistrates or to the sheriff and his deputies—and if they are wrong, and are on that ground without the ordinary remedy, they should of course not be aided in such case by an extraordinary injunction. To warrant an extraordinary interposition in their favor they must show, if not an " unquestioned title," at least a strong presumptive one, and danger of " irreparable injury."   Both these conditions must concur.   Such is the law even in reference to threatened trespasses on real property (7 *Johns. Ch. R.*, 315). The reason of the rule is still stronger when applied to mere movable chattels not in possession of the party sought to be enjoined, but in the possession, as this complaint virtually admits, of the plaintiffs themselves.   On the assumption that Mr. Conover's title, for the purposes of this motion, is to be taken to be as good as Mr. Devlin's and Mr. Devlin's as good as Mr. Conover's (I have no power as yet to decide that issue between them), what occasion is there for interference ?   As to the mere custody

of the books, I am to presume that it will be equally safe to whichever of the claimants it may be confided, and as to any threatened removal, it is positively denied under the defendant's oath. The defendant also denies, in like manner, any intention to take possession of them "except by the legal proceedings before Mr. Justice Peabody." Whatever then may be the technical character of those proceedings, am I, seemingly even, to revise them by injunction? Is that either the fit or the orderly mode of review, one single judge sitting in judgment upon the action of another single judge of the same court and with the same powers?

The public interest—the interest of all persons having business with the office in controversy—imperatively requires that until the question of title can be decided, there should be some one person recognized as in peaceable possession *de facto* of the office, and of course of the muniments necessary to the discharge of its duties. Whether that person, in the present case, shall be Mr. Conover or Mr. Devlin is of less consequence. The former is in possession,—so, at least, Judge Peabody has decided,—in possession, I mean, of the office. Why, then, should I enjoin him from interfering with the books of the office?

In the case of Tappan and Gray, the two contesting flour inspectors, an injunction issued by the vice-chancellor was dissolved in effect by the chancellor, and the dissolution unanimously affirmed by the court above (Tappan *v.* Gray, 9 *Paige*, 507; S. C. aff'd, 7 *Hill*, 259). "This court," said the chancellor, "certainly ought not to assume the jurisdiction to oust an officer in no way connected with the administration of justice, and over whose appointment it has no control, from an office the duties of which he is discharging under color of an appointment from the executive of the State, until his right to such office has been settled in the mode prescribed by the Revised Statutes for the determination of his claim," that is, by proceedings in the nature of a *quo warranto*. Gray in that case, like Conover in this, claimed under a disputed and (as the Constitution then stood) a very doubtful commission of the governor, issued without the sanction of the Senate; and like Conover, Gray too was in possession of the office in respect of which he was sought to be enjoined. The two cases, therefore—assuming the fact to be as Judge Peabody has decided it to be—are perfectly analo-

gous. I am aware that technically, on the present application of the city authorities, I am not bound by that decision, and that had the same evidence been before me I might possibly have received it in a different light, and as a consequence have arrived at a different result. But although not bound by the decision, as an absolute *res judicata*, I am bound to respect it as a controlling consideration in a matter addressed to my judicial discretion and my sense of judicial fitness. The public order and the harmonious action of the judiciary, as was in substance observed by a late distinguished chancellor, are more important than the rival claims, however interesting to the immediate parties, of two competing flour inspectors or street commissioners.

It is to be regretted that the question of title cannot be promptly brought to a final determination. Had forms been waived, that question might have been disposed of in much less time, and with much less labor and expense than have already been bestowed upon the merely incidental point of present possession. The facts necessary for its adjudication are undisputed, and may be stated in a few lines. And the arguments and authorities which were deemed proper in the discussion of the question of "color," and which extended over several days, would, it is to be presumed, need little expansion to settle the question of "substance." Under the circumstances, it would seem to be the duty of the attorney-general to interpose. "Where several persons," says the Code (§ 440), "claim to be entitled to the same office or franchise, one action (by the attorney-general) may be brought against all such persons, in order to try their respective rights to such office or franchise."

The court, it will be seen, might have disposed of the present motion on a single proposition—that a mere naked trespass (threatened or apprehended) is no ground for an injunction. It has seen fit, however, for reasons which will be readily appreciated, to indulge in a more extended line of comment, and in the discussion and statement of several additional points of difference referred to in the following conclusions:

*First*. That injunctions to restrain an apprehended trespass, unless under very special circumstances, which do not exist in this case, are never allowed.

*Second*. That a preliminary injunction to oust in effect a party, although only temporarily, from the exercise of the functions of

an office, by preventing his access to the books and papers pertaining to it, is also contrary to the established forms of law.

*Third.* That the issuing of such an injunction being at all events not a matter of strict right, but of judicial discretion, the. previous determination of an officer of coequal powers, although of a special proceeding and nominally between other parties, if made after a full hearing, should be treated as almost if not altogether conclusive.

*Fourth.* That if the books in question are, as the complaint alleges, the private property of the corporation and in possession also of the corporation, no injunction can be needed or should be issued to protect them against unlawful disturbance; they must be protected by the same means, remedial or preventive, as apply to cases of assault and battery and other threatened trespasses of a like character. And whether their custody, for the time, be in the one claimant or the other, " the legislative power of the corporation," in other words, its legislative will, extends alike to the books and their custodians, and may, without the aid of any court, regulate the one and enjoin the other. The commissioner himself, whether it be Devlin or Conover, if need be and cause exist, may be removed by the plaintiffs themselves, or by the mayor and aldermen, two of their constituent branches, and may thus be effectually restrained without judicial intervention, ordinary or extraordinary, not only from interfering with the books of the office, but with the office itself. (*New Charter*, § 21, *Laws of* 1857, 878, *ch.* 446.)

*Fifth.* That the question of title, so far as respects the office of street commissioner, cannot legally be tried in this action; the people of the State must be parties for that purpose, and the mode of proceeding must be by quo warranto in conformity to the Code.

*Sixth.* No injunction should be granted, because no injunction is needed, and because its operation, if issued, would conflict with the orderly conduct of another proceeding, lawfully and previously commenced under a special statute before another judge (although acting in a different capacity) of the same grade and of the same court.

*Seventh.* The regular and sufficient process for reviewing the possessory question, and of staying proceedings in the interim, is, by ordinary writ of certiorari, returnable to and heard before the

general term of the court, instead of a single judge, whether sitting at chambers or special term.

With these views the temporary restriction necessarily ceases, and the order to show cause must be discharged.