JAMES E. COULTER *v.* HENRY MURRAY *et al.*

A police justice of the c     ᵒf New York, elected in pursuance of the act of April 28, 1869 (Laws of 18(     ˻hap. 377), is not a constitutional officer within the meaning of the Consti     ˻ion of 1846, and the Legislature had the power to abolish the office hel     thereunder, or abridge the tenure thereof.

The act passed May 17, 1 73, entitled " An act to secure better administration in the Police Courts of the city of New York," is a sufficient authority for the dissolution of an injunction obtained to prevent the justices appointed thereunder from taking possession and exercising the functions of their office; and to this extent, said act must be held to be constitutional.

SPECIAL TERM, *November*, 1873.

APPLICATION for a permanent injunction.
The facts are stated in the opinion.

*Elbridge T. Gerry*, for plaintiff.

*John K. Porter, Dorman B. Eaton, Nelson J. Waterbury, & James M. Smith*, for defendants.

LARREMORE, J.—It is alleged in the complaint in this action that at a general election held in the city of New York, December 7, 1869, the plaintiff was elected to the office of police justice for the Seventh Judicial District of said city for the term of six years from January 1, 1870, of which election a certificate in due form was issued by the proper authorities; that on the day last named he took the oath of office, and entered upon the discharge of his duties as such police justice, and has ever since continued to discharge the same; that he is entitled to the emoluments thereof, and to hold and possess the

books and papers belonging thereto; that on February 11, 1870, the Attorney-General, in the name of the people of the State of New York, upon the relation of the defendant Murray, did commence an action in the nature of a *quo warranto* to try plaintiff's title to said office, to which it was therein alleged said Murray was elected and entitled; that issue was joined therein, and said proceeding is still pending. It is further alleged that the defendants have unlawfully confederated and conspired together to interrupt the plaintiff in the performance of the duties of his said office, and oust him therefrom on November 4, 1873; that defendants have openly threatened to do so by force and violence, as well as to institute a prosecution against him in case he should refuse to deliver possession of said office on demand thereof by the defendants; that they did secretly assemble at a time and place stated, and did then and there unlawfully conspire and agree, and did designate the defendant Murray as the person in whose name and under whose direction the wrongs and violence apprehended and complained of should be done.

The plaintiff then asks the judgment of the court that the defendants, individually and collectively, their attorneys and agents, be enjoined from doing, or causing to be done, any of said acts, or from interrupting or embarrassing him in the exercise of the duties of his said office until the expiration of the term thereof, or until final judgment shall be rendered against him in said action of *quo warranto*; and that they be further enjoined from intruding on him in said office, or from making any demand for the books and papers belonging thereto, or from instituting any proceeding for the recovery thereof, otherwise than by an action of *quo warranto*.

The question might here be raised, whether, upon the facts stated, a criminal conspiracy has not been established for which the law has provided an adequate remedy, and for the prevention of which a court of equity would refuse to interfere.

But the affidavits of the defendants, read in opposition to this application, explain and define the real position of the parties to this contest.

The defendants allege that on May 17, 1873, an act was

passed by the Legislature of this State, entitled "An act to secure better administration in the Police Courts of the city of New York" (Laws of 1873, chap. 538), providing for the appointment of police justices in said city, and abolishing all existing provisions of law for the election of such officers; that in said act it is further provided that when appointments of police justices shall have been made as therein prescribed, all the powers, authority and duty appertaining to any police justice in said city, or which might appertain to any such justice then in office, under laws theretofore existing, should belong to and be exercised and performed by the police justices appointed thereunder; that at the time when the justices so to be appointed shall acquire the powers aforesaid, the tenure, salaries and authority of the police justices theretofore existing in said city should cease and determine; that the officers last named are by said act required to deliver all the papers, documents and records appertaining to their said office, to such new police justices, who are authorized to continue and complete any pending inquiry, action, and proceeding in the police courts or special sessions.

The defendants further allege that, in pursuance of said act of May 17, 1873, they have been duly appointed and commissioned as police justices of the city of New York, and they severally deny that plaintiff is a police justice of said city, or that he has any right to said office. The equities are thus as broadly denied as though an answer had been interposed (*Perkins* v. *Warren*, 6 How. 341). The plaintiff has not traversed the statement of the defendants as to their appointment under such act, but insists that the same, as to him, is unconstitutional and void.

The decisive question in this case has a direct relation to the character of the office which plaintiff seeks to retain, viz.: Is a police justice of the city of New York a constitutional officer, within the purview and meaning of the Constitution of 1846?

It is therein provided that, "All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such man-

ner as the Legislature may direct " (article 6, sec. 18, Constitution of 1846).

When the convention met to frame said instrument, there existed, in the city of New York, two classes of justices of inferior jurisdiction, viz. : special justices and assistant justices, appointed by the common council of said city. In the organization of inferior tribunals by said convention, the said special and assistant justices were excepted, and their subsequent jurisdiction and continuance left to the action of the law (see Debates in Constitutional Convention, 1846, pp. 818, 820).

Thus, from being permanent officers, as they were under the Constitution of 1822 (art. 4, section 14), they were left as appointive officers by the Constitution of 1846, subject to legislative action. Such action was taken March 30, 1848, whereby the terms of said officers were abridged, and the offices held by them abolished.

By an act passed March 30, 1848, entitled "An act in relation to justices and Police Courts in the city of New York" (Laws of 1848, chap. 153), said city was divided into six judicial districts, in each of which it was directed that one police justice should be elected for the term of four years, and who should have all the powers and perform all the duties of the special justices for preserving the peace in said city, which last-named office was thereby abolished.

This (so far as I have been able to find) is the first statutory mention of the office of police justice for said city.

It is a new and distinct office, not in existence when the Constitution of 1846 took effect, but was established in pursuance of its provisions.

Subsequent legislation increased the number of judicial districts in said city, and on April 28, 1869, an act was passed, defining the seventh judicial district of said city, and providing for the election of a police justice therein, who should hold office for six years from January 1, 1870 (Laws of 1869, chap. 377).

Under this act plaintiff claims to have been elected to office, and that he is entitled to hold the same until the expiration of

the term prescribed therein. Such claim has no legal foundation, so far as it affects this application.

If he had been in possession of a constitutional office on January, 1, 1870 (the day when the amended judiciary article of 1867 took effect), he would have had a legal right to hold the same until the expiration of the term thereof (*The People* v. *Gardner*, 45 N. Y. 812).

But the office in question being a local and inferior one, was (by sec. 14, art. 6, of Constitution of 1846) subject to legislative control and action. The only constitutional restriction imposed upon said action was that said office, while it existed, should be elective.

The Legislature had the power to abolish the same or abridge the tenure thereof (*The People* v. *Morrell*, 21 Wend. 562; *Sill* v. *The Village of Corning*, 15 N. Y. 297; *Brandon* v. *Avery*, 22 Id. 469).

The amended judiciary article 6 of 1867 provides (section 18) that " all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article shall be chosen by the electors of cities, or appointed by some local authorities thereof."

Under this provision the said act of May 17, 1873, was passed, abridging plaintiff's term of office and conferring the powers and duties thereof upon the officer or officers named in said act.

The act last mentioned repeals the acts of March 30, 1848, and April 28, 1869, by implication. The one is inconsistent with the others. The plaintiff is stripped of all power and authority as a magistrate, and the intention of the Legislature that his duties and functions should cease by the time specified, is clear and unequivocal (*Harrington* v. *Trustees of Rochester*, 10 Wend. 551; *Brown* v. *Osborne*, 2 Cow. 457; *People* v. *Deming*, 1 Hilton, 274; 1 Kent's Com. 524).

It would thus appear that the equities of the case are strongly in defendants' favor, and that they are entitled to a dissolution of the injunction.

The cases cited by plaintiff's counsel do not authorize his application (*In re Baker*, 11 How. 430; *In re Whiting*, 2

Barb. 518 ; *Welch* v. *Cook*, 7 How. 178 ; *People* v. *Allen*, 42 Barb. 203 ; *Conover's case*, 5 Abb. 74). They were cases in which proceedings were taken under the statute to compel the delivery of books and papers by a *de facto* to a *de jure* officer.   None of these authorities sustain the proposition so ably contended for, that injunctive process should be issued to restrain a party from taking possession of the books and papers of an office under a color of title thereto.   On the contrary the opposite theory prevails, that title to an office can only be tried in a proceeding in the nature of a *quo warranto* (*People* v. *Stevens*, 5 Hill, 616 ; *People* v. *Mather*, 4 Wend. 229 ; *Hartt* v. *Harvey*, 32 Barb. 64 ; *Mott* v. *Connolly*, 50 Barb. 516 ; *People* v. *Cook*, 4 Seld. 70 ; *Mayor* v. *Conover*, 5 Abb. 171 ; *People* v. *Stevens*, 2 Abb. N. S. 353 ; *Hall* v. *Luther*, 13 Wend. 491 ; *Smith* v. *Mayor*, &c. 1 Daly, 219).

It is also contended that the act of May 17, 1873, is in violation of section 16, article 3, of the Constitution, and therefore void ; that it is a local bill, and embraces more than one subject which is not expressed in its title.

I do not think it is open to this criticism.   Each of its provisions has a natural and necessary connection with the proposed plan of administration of the courts in question, and the subjects referred to therein are germain to, and fully expressed in its title (*Conner* v. *Mayor*, 1 Seld. 294 ; *In re Wakker*, 3 Barb. 162).

The injunction should be denied.