## SUPREME COURT.

JOHN MOTT, PHILIP G. WEAVER, and WILLIAM RICHARDSON, agt. SAMUEL C. DUNN, GEORGE A. DOREMUS, ALEXANDER M. BAKER, and EDWIN W. DIMMOCK.

Where a debt is not disputed, and where a preliminary *judgment and execution* would be of no use, (there being actual insolvency,) it is competent for the creditor, as the law now stands, in cases of *fraud*, or *contemplated fraud*, to apply *at once for an injunction and receiver*, and have his demand *liquidated and paid in one proceeding*.

That is, a simple contract creditor, on a claim not disputed, before resorting to and exhausting his remedy by *judgment and execution*, may interfere with, and arrest the disposal of his debtor's property, (by injunction, receiver, &c.,) and call him to account—and with him, his *assignees*—for any alleged fraud or illegality in its transfer; thus effecting, in *one suit*, what formerly required *two* to do.

*New York Special Term, December,* 1854.

THE plaintiffs in this case were partners in business, and merchants doing business in the city of New-York, under the name and firm of Mott, Weaver & Richardson. They brought their action, and, in their complaint against the defendants, claimed that previous to the 28th of March, 1854, Dunn and·Doremus were general partners, engaged in the city of New-York and elsewhere in the business of purchasing and selling goods and merchandize, under the name and firm of Samuel C. Dunn & Co. That on or about the 21st of October,

(a) The above decision was affirmed on appeal to the general term, in the 7th district, in March, 1854.

1853, the defendants, Dunn & Doremus, made, endorsed and delivered to the plaintiffs a promissory note, of which the following is a copy :

" $953.35.                    " *New-York, 21st Oct.*, 1853.

" Eight months after date, we, the subscribers, of New-York, state of, promise to pay, to the order of ourselves, nine hundred and fifty-three dollars, thirty-five cents, at ―――, value received.

"SAMUEL C. DUNN & Co.,

" 37  Dey-st."

That, on or about the 24th of October, 1853, the said Dunn & Doremus also made, endorsed and delivered to the plaintiffs another promissory note (setting forth a copy similar to the other,) for $558.23.   That said notes had not, nor had either of them, or any part thereof, been paid; that the plaintiffs were then the holders and owners of the same, and that the defendants, Dunn & Doremus, were justly indebted to them thereupon in the sum of $953.35, with interest from June 24, 1854; and in the sum of $558.24, with interest from June 27, 1854.

That the plaintiffs, at the request of the defendants, Dunn & Doremus, sold and delivered to the latter, goods and merchandize as follows : On the 8th Feb., 1854, to the amount of $13 95 ; on the 11th Feb., 1854, to the amount of $561.87 ; on the 27th Feb., 1854, to the amount of $122.64; on the 20th March, 1854, to the amount of $69.66 ; on the 21st March, 1854, to the amount of $12.30 ; and on the 28th March, 1854, to the amount of $82.29.   For which several amounts the said Dunn & Doremus promised to pay the plaintiffs, but had failed and neglected so to do ; and were then justly indebted to the plaintiffs therefor in the sum of $862.90.

That, on or about the ―― day of April last, the defendant, George H. Doremus, sold and transferred to the defendant, Samuel C. Dunn, all his right, title and interest in and to all the property, effects and assets of the said firm of Samuel C. Dunn & Co., and that an agreement was then entered into

between said Doremus and Dunn, that the partnership should be, and thereby was dissolved. That, at the time of such sale and dissolution, the said firm of Samuel C. Dunn & Co., and said Doremus and Dunn, individually, were insolvent and unable to pay their debts, which was well known to them.

That, on the 18th May last, said Dunn, for himself individually, and the firm of Samuel C. Dunn & Co., executed and delivered to the defendants, Alexander M. Baker and Edwin W. Dimmock, a general assignment of all their property, choses in action, &c., for the benefit of their creditors, (setting out a copy of it.) That, on the 26th May, 1854, said Doremus executed, at the foot of said assignment, a consent and ratification thereof.

The plaintiffs claimed and averred, that said assignment and transfer, and the ratification aforesaid, were made and entered into for the purpose of *delaying*, *hindering*, and *defrauding* the creditors of the said firm, and were fraudulent and void as against said creditors. That soon after the execution of the assignment, &c., the assignees took, and then held, possession of all the property and effects intended to be conveyed by said assignment.

That the property and effects included in and covered by the assignment, did not exceed in value $50,000; that the preferred debts mentioned in the schedules A. and B., (attached to the assignment,) amounted to about $34,000; and that the whole indebtedness of said firm of Samuel C. Dunn & Co., exceeded $111,000. That there were sundry mortgages, notes, and choses in action, which belonged to the said late firm of Samuel C. Dunn & Co., and included in the assignment, amounting to a sum exceeding $11,000, which, previous to the making of the assignment, had been hypothecated by said Dunn to various individuals and firms, and were then held by them as security for the payment of small sums, borrowed from such individuals and firms by said Dunn for said firm, and on its account; and which mortgages, notes, and choses in action, the creditors of said firm of Samuel C. Dunn & Co., were equitably entitled to redeem and obtain possession of, and apply to

the payment of their just claims against the firm. That a large portion of the property and effects included in the assignment consisted of clothing and other merchandize, in the city of New-York, and Charleston, South Carolina, of a perishable nature, to the estimated value of about $20,000; and that another large portion consisted of accounts, notes, and choses in action, against various individuals and firms, of the value of about $30,000; a part of which accounts, notes, and choses in action, were then due, and the remainder were from time to time falling due; and that, for the protection of the interests of the creditors of the firm of said Samuel C. Dunn & Co., said goods and merchandize ought to be sold and converted into money without delay, and the said accounts, notes, and choses in action, should be collected; and for that purpose, and for the protection of the plaintiffs and others, the creditors of said firm, the said property and effects ought to be placed in the hands of a *receiver*, to be appointed by the court, with the usual powers in such cases.

Wherefore, the plaintiffs asked, that, by the judgment of the court, the defendants, Samuel C. Dunn and George H. Doremus, might be adjudged and declared to be indebted to the plaintiffs, and required to pay to them the said sum of $953.35, with interest from the 24th June, 1854; the sum of $558.23, with interest from the 27th June, 1854; and the sum of $862 91, with interest from the time of the commencement of this action, and the costs of this suit; and that the said plaintiffs have judgment therefor, with costs; that the said pretended assignment and ratification thereof be declared fraudulent and void; that a receiver of the said property be appointed, with the usual powers; and that the defendants, Baker and Dimmock, be required to render an account, under oath, of the property and effects which have come to their hands, and of the proceeds of the same, or any part thereof, and to transfer and deliver the same to such receiver; that out of the proceeds of the said property, the plaintiffs be paid the amount of their said claim, with costs; and that the plaintiffs have such other and further relief and judgment against the said defendants,

respectively or collectively, as to the court should seem meet.

The defendants, Alexander M. Baker and Edwin W. Dimmock, demurred to the complaint. *First*, that as to the said defendants, Baker & Dimmock, the court had not jurisdiction of the subject matter of the action; because the plaintiffs were, as appeared by the complaint, only simple contract creditors of the defendants, Dunn & Doremus, and had not recovered judgment for the demands set forth in the complaint.

*Second*, That there was a defect of parties plaintiffs in this; that the action, if sustainable at all, could only be brought in the names of the plaintiffs and all others, the creditors of the said Dunn & Doremus, who were willing to come in and contribute to the expenses of the suit.

*Third*, That the complaint did not state facts sufficient to constitute a cause of action against the defendants, Baker & Dimmock, because,

1st. It did not appear by the complaint that the plaintiffs had ever recovered judgment against the defendants, Dunn & Doremus, for the several demands set forth in the complaint; but the contrary did appear by said complaint.

2d. The complaint did not set forth how, or in what manner, the creditors of the said Dunn & Doremus were hindered, delayed, or defrauded, by the making of the assignment to said Baker & Dimmock.

3d. It did not appear by the complaint, on what ground, or under what state of facts, the plaintiffs claimed the said assignment was fraudulent or void, as against the plaintiffs, or the creditors of said Dunn & Doremus.

4th. The complaint did not disclose or set forth the grounds or facts on which the plaintiffs relied, to show that said assignment was made to delay, hinder or defraud the plaintiffs, or the creditors of said Dunn & Doremus.

5th. By the complaint, it appeared affirmatively, that the assignment made by said Dunn & Doremus to Baker & Dimmock, was a good and valid instrument, and had vested in the assignees a good and valid title to the property and assets in

said assignment, described for the uses and upon the trusts in said assignment specified.

*Fourth*, That several causes of action were improperly united, because the several demands arising on contract against the defendants, Dunn & Doremus, were improperly united with an alleged cause of action against the defendants, Baker & Dimmock, arising from an alleged fraudulent assignment by said Dunn & Doremus to said Baker & Dimmock.

E. P. COWLES, *for defendants, Baker & Dimmock.*
WM. CURTIS NOYES, *for plaintiffs.*

ROOSEVELT, Justice.    This action, in one of its aspects, is of a novel character.  It proceeds upon the assumption, that a creditor, before resorting to, and exhausting, the ordinary remedy by judgment and execution, may interfere with and arrest the disposal of his debtor's property, and call them to account—and with them their assignees—for any alleged fraud or illegality in its transfer.   The demand of the plaintiffs, it is true, is not disputed.   It is an ordinary case of goods sold, and promissory notes.    Still, for aught it appears, the amount might have been collected by an ordinary execution.   What ground is there then, it may be asked, for a complaint in the nature of a bill in equity ?   The defendants insist that there is none ; and that the demurrer which they have interposed aught, therefore, to be allowed, and the complaint dismissed.

The firm of Dunn & Doremus, it appears, after contracting the debts in question, became insolvent, and was dissolved by a transfer from Doremus to Dunn of all his interest in the partnership effects.   Whereupon Dunn, signing both his individual name, and that of Dunn & Co., a few weeks after, on the 18th of May last, made an assignment to Baker & Dimmock, of all the assets of the *firm*, in trust to convert the same forthwith into money, and pay the creditors according to the order of preferences prescribed in the instrument.

This assignment, the plaintiffs aver, was made to delay, hinder and defraud the creditors ; and they insist that, as against

the creditors of the firm, it is void. They accordingly demand, *first*, a judgment for their debt; *secondly*, a judicial determination of the invalidity of the assignment; *thirdly*, the appointment of a receiver; *fourthly*, an order to compel the assignees to render an account; and *lastly*, that the plaintiffs may be paid the full amount of their debt and costs out of the assets or their proceeds.

On the face of the assignment, no invalidity appears. This position seems to be conceded. The mere creation of preferences, however objectionable as a matter of sound policy, is not illegal. But, in this case, is there not more? The actual " purpose" of making the instrument, it is averred, and by the demurrer it is admitted, was "fraudulent;" and the statute declares that every transfer made with such a purpose, as against the parties injured, shall be adjudged void. It may be that the charge on this point, as matter of pleading, should have been made more specific. That is a defect, however, if it exist, which, under the Code, is to be corrected by amendment, and not to be visited with dismissal. A summary application, and not a formal demurrer, is the remedy prescribed.

Assuming, then, the assignment to have been fraudulent, not in law merely, but in actual intent, the question is, and it is the only question, can a partnership creditor, upon the mere admission of his debt, in a case of conceded insolvency, file a bill at one and the same time judicially to establish his claim, and to set aside as fraudulent the debtor's dispositions of his property —in other words, is one suit, as the law now stands, admissible, instead of the two which were formerly supposed to be necessary?

Cheapness and dispatch are obviously in favor of the practice—and simplicity and common sense would seem also to recommend it. Why, it may be said, resort to the idle ceremony of a preliminary judgment and execution, in a case where *nulla bona* must be the inevitable return. Insolvency, it will be recollected, is admitted—insolvency not only of the firm, but of " each and all its members." In the case of limited partnerships, the practice has been repeatedly allowed—even before

the Code—a statute passed, it should be borne in mind, under an express constitutional mandate, making it the duty of the legislature " to revise, reform, simplify, and abridge the rules and practice, pleadings, forms, and proceedings of the courts of record of this state," and to be interpreted, therefore, as its title also imports, in the spirit of that mandate. It would consequently be no great stretch of remedial justice—and certainly no violation of principle—since the Code, to extend the practice, if not to general, at least to *quasi* limited partnerships, such as that of Dunn & Co. became, after the assumption by Dunn of all the liabilities, and with them all the assets of the firm.

There is, moreover, an express provision, (the last clause of section 219,) which would seem to warrant a suit embracing the two objects in one proceeding. It declares that " where, during the pendency of an action, it shall appear by affidavit, (a sworn complaint is an affidavit,) that the defendant threatens, or is about, to remove or dispose of his property with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition,"—an injunction, as I read it, not only in favor of a judgment creditor, but in favor of any creditor who may be, and in the opinion of the court upon the facts stated, will be injured by the fraud.

Now, as to their creditors, Dunn & Co. are still the owners of the property, and any disposition by the assignees, with their assent, will be a disposition by them. And assuming, as we must, the truth of the allegations in the complaint, it will be a fraudulent disposition. It is a disposition, moreover, which the contents of the assignment clearly show that " the defendants threaten or are about" to make. Why then may they not be enjoined? And how can the debtors (the Code says defendants,) be effectually enjoined, unless their assignees are also made parties? If not parties, and given an opportunity to be heard, the assignees would not be bound by the order of the court. The injunction in that case would operate only on the debtors. In effect, it would be a *brutum fulmen.* What right then have the assignees to demur? the assignors make no

objection that they are made parties to a suit in which they are so clearly entitled to be heard. What right have they to object that the plaintiffs have not first exhausted their ordinary common law remedies against their debtors, when their debtors make no such objection themselves? And that, under a system of procedure which "abolishes the forms of the common law," and all "distinction between legal an equitable remedies;" and whose sole and avowed object is "to simplify and abridge the practice, pleadings and proceedings—as contradistinguished from the strengthening and perpetuating of the idle ceremonials —of the courts of this state?"

Upon the whole, my conclusion is that, where the debt is not disputed, and where a preliminary judgment and execution would be of no use, it is competent to the creditor, as the law now stands, in cases of a fraud or contemplated fraud, to apply at once for an injunction and receiver, and have his demand liquidated and paid in one proceeding.

Demurrer overruled, and judgment for plaintiffs with costs, unless the defendants, in twenty days, put in an answer, and pay the costs of the demurrer.