Mitchell v. Bettman.

---

MITCHELL and others *vs.* BETTMAN.

GILLILAN *vs.* THE SAME.

An injunction may now be issued, and a receiver appointed, before judgment, at the instance of any creditor, and against any debtor, to prevent a fraudulent disposition of property and as a security for the satisfaction of such judgment as the plaintiff may recover.

APPEAL from an order made at a special term. The actions were brought to recover the value of goods sold and delivered to the defendant, by the plaintiffs, respectively, on a credit. The complaints respectively alleged fraud on the part of the defendant in contracting the debt, and that he purchased the goods without any intention of paying for the same, and in pursuance

Mitchell *v.* Bettman.

of a plan concocted by him, by which he intended to defraud the plaintiff out of the goods. That the defendant had removed and disposed of large portions of his property, and threatened and was about to dispose of other and large portions thereof, with intent to defraud his creditors; that on or about the last of February, 1857, he had, with the same intent, consigned a large amount of linen and crape shawls, to the value of over $4000, and which were all among the recent purchases of the defendant, and had, in fact, never been unpacked from their original packages, in which he purchased them, to Myers, Claghorn & Co. of Philadelphia, auctioneers, for sale at auction; which goods were sold, at a great sacrifice, and the proceeds paid over to the defendant, said goods being sent clandestinely, and in the name of one Maas. That after making the purchases from the plaintiffs, and other large purchases, from various merchants in New York, on a credit of eight months, the defendant sold large quantities of said goods, to various firms and individuals, on long credits of from nine to sixteen months, and for the same prices at which he had purchased them : that the defendant had concealed a large portion of the goods so purchased of the plaintiffs, amounting to about $9000, with the intention of appropriating the same to his own use, in fraud of his creditors; that he had threatened that he would not appropriate all his property to the payment of his debts, and that if his creditors would not accept the compromise he offered them, of fifty cents on the dollar, or if any of them should sue him, he would place his property beyond the reach of his creditors. That the defendant was insolvent and unable to pay his debts; and that unless he was restrained by an order of the court the whole of his property and assets would be fraudulently converted and disposed of, so as to be beyond the process which the plaintiffs claimed to be entitled to as part of the judgment in this action, and so as to render the judgment asked for, ineffectual. The plaintiffs then prayed for a decree or judgment against the defendant, directing the payment of their debts, and that the defendant might be restrained by an order of the court, from selling, assigning, transferring, collecting or receiving, any part of said

goods or assets, &c., or from any interference therewith during the pendency of this action, or until the further order of the court; and that a receiver might be appointed, with the usual powers, &c.

Upon the summons and complaint and an affidavit thereto annexed, an order was made, on the 13th of April, 1857, by Justice Davies, for the defendant to show cause, at a special term, on the 20th of the same month, why a receiver of the defendant's property and effects should not be appointed; and in the meantime, and until the further order of the court, the defendant, his agents, attorneys, servants, &c. was and were ordered to desist and refrain from selling, assigning, transferring, collecting or receiving any of the goods, estates, debts, accounts, &c. mentioned in the complaint, and from any interference therewith.

On the day for showing cause, on the 30th of April, 1857, at a special term held before Justice Mitchell, the motion for a receiver was denied, with $10 costs, and the injunction was modified and retained so far as to restrain the defendant, his agents, attorneys and servants from removing or disposing of any part of his property, goods, debts, assets, accounts or books of account named in the complaint, *with intent to defraud his creditors* or any of them, until the further order of the court; and the question whether said injunction so far as it was retained should be dissolved or modified thereafter, and whether a reference should be ordered, to ascertain the truth of the facts alleged or controverted by the respective parties, was reserved, with all other questions arising on said motion, until the further order of the court.

From this order the plaintiffs appealed.

*Parsons & Riggs*, for the appellants.

*Benedict & Boardman*, for the defendant.

*By the Court*, ROOSEVELT, P. J.   In the absence of a general bankrupt law—so much needed at the present time—the legislature of the state have deemed it wise to curtail, in certain

Mitchell *v.* Bettman.

specified cases, the absolute control of debtors over their property, and to give to their creditors, preliminarily, before final judgment and execution, a right to interpose to prevent the consummation of any contemplated fraud.

The 219th section of the code provides that " where, during the pendency of an action, (meaning of course before the recovery of final judgment) it shall appear by affidavit that the defendant threatens or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition."

The present plaintiffs having commenced an action against the defendant on their demands, applied accordingly to a judge, during its pendency, for a temporary injunction and receiver. They were met immediately by two objections; first, that their complaint, on its face, admitted that the goods had been sold on an unexpired credit of eight months. The credit, however, it is alleged, was obtained fraudulently, and the right to it thereby forfeited; so that the seller had the option of treating the transaction as a cash sale. The plaintiffs in their complaint make the election and the necessary averments to warrant it. I must assume, therefore, for the purposes of the motion, that a present prima facie cause of action exists.

But fraud in contracting the debt is, alone, not sufficient to warrant a preliminary injunction on all the debtor's property, before the debt has been established by final judgment; it must further appear that he is about to " remove or dispose of his property with intent to defraud his creditors."

In the present case it did so " appear by affidavit" to the judge at special term, and he accordingly, after hearing both parties, did grant a temporary injunction to restrain the defendant from removing or disposing of any part of his property; but added the words, " with intent to defraud his creditors, or any of them;" leaving him free to make any other disposition, and refusing to place his property in the hands of a receiver. In this order, although founded on the assumption of threatened fraud, the defendant acquiesces. The plaintiffs alone appeal; insisting that the property of the defendant should have been taken

entirely out of his hands and placed in those of a receiver, as the only effectual mode of restraining the threatened fraudulent removal. There is much apparent force in the objection. A mere injunction, unaccompanied by a receivership, may be easily evaded. The debtor may take his goods out of the jurisdiction, and his person with them. What in such case becomes of the injunction? It is a mere *brutum fulmen.* Should the court attempt a commitment for its violation, the debtor might stand on the boundary of Connecticut or New Jersey and deride the process. Before the adoption of the code, a creditor at large, before judgment, except in cases of trust or quasi trust, had no remedy. The debtor had the absolute control. (*Reubens* v. *Joel*, 3 *Kernan*, 488.) Such was the common law—without a bankrupt act—and such of course must continue to be the law until altered by legislation. Now the code says nothing, in such a case, about appointing a receiver. All it allows the judge to grant is a "temporary injunction." But does not the power to restrain by injunction carry with it the power to dispossess, if, as in case of movable property, that be the only safe and effectual method of restraining? As a general rule the grant of a power carries with it all the incidents necessary and proper to the effectual execution of the power granted.

Every day's experience shows that in disputes between partners, a receiver is the invariable attendant upon an injunction. The practice proceeds upon the principle that where two parties have an interest in goods and debts, and neither is willing to trust the other, both should be restrained and an impartial intermediary appointed to protect the rights of both. The parties are regarded in some sense as trustees for each other, and liable, as such, to be removed for cause, at the instance of each other. In the case of limited partnerships a quasi trust is regarded as existing, even as between the firm and its creditors; and the latter as a consequence, and independently of the code, may interpose without first getting a judgment lien. (2 *John. Ch.* 144. 7 *Paige*, 583.)

- The code, even before the recent amendments, seems to have contemplated an extension of the principle to the general case

of fraudulent debtors. It recognizes an interest of the creditor in the debtor's property "*pending* an action," and of course before final judgment—an interest which ought to be protected against any fraudulent removal or disposal, if threatened or contemplated. But the recent amendments of 1857 contain a still more explicit recognition of the principle. They not only provide for an injunction to restrain the debtor, but for an attachment to seize the debtor's effects in any "action for the recovery of money," if it appear that he is "about to remove any of his property from this state, or has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete any of his property with intent to defraud his creditors." Whatever, therefore, may have been the rule prior to the 7th of May last, an injunction, in effect, may now be issued, and a receiver (in the person of the sheriff) appointed, before judgment, at the instance of any creditor, and against any debtor, to prevent a fraudulent disposition of property, and "as a security for the satisfaction of such judgment as the plaintiff *may recover*." (§ 227.) Instead, then, of appealing from the order of the 30th of April, the plaintiffs should have waited till the 7th of May, twenty days after the passage of the amending act, and have then applied for an *attachment*. They may do so still. The appeal, therefore, being unnecessary, should for that reason be dismissed, or the order be affirmed—but without costs.

[NEW YORK GENERAL TERM, September 14, 1857. *Mitchell, Roosevelt* and *Peabody*, Justices.]