No. 7651.

## MOREY ET AL. *v.* BALL.

INJUNCTION.—*Supplemental Complaint.—Practice.*—Where a party, after filing his complaint, files a supplemental complaint seeking to obtain an injunction, and the court issues an order without notice, and upon motion refuses to dissolve the injunction, and an appeal is taken from such order, it will be considered as an injunction and not a mere temporary restraining order.

SAME.—*Demurrer.*—Where the defendant appears without notice and files a demurrer to such supplemental complaint, the court does not err in issuing an injunction without first passing upon the demurrer, as a demurrer to such pleading is unknown to the practice.

SAME.—*Fraudulent Conveyance.—Judgment.*—A creditor under our statute may enjoin his debtor from transferring his property fraudulently without first obtaining a judgment.

SAME.—*Partnership.—Averment in Complaint.*—Where two persons constitute one firm, and are members of another, and an action is brought to restrain them from fraudulently disposing of the property of the latter firm, it is error to enjoin them from disposing of the property of the former firm, or of their individual property, without any averment that they are threatening to do so, and when such order is made it is error to refuse, upon motion, to modify it as to the property of such last named firm, or their individual property.

From the Tippecanoe Circuit Court.

*J. M. LaRue* and *F. B. Everett*, for appellants.

*R. P. Davidson, J. C. Davidson* and *W. D. Wallace*, for appellee.

BEST, C.—The appellee brought this action against Robert Morey, Gardner Ball and Seneca Ball. The complaint consisted of two paragraphs. The first averred, in substance,

that Robert Morey, Gardner Ball and Seneca Ball, on the 4th day of September, 1878, were partners doing business under the firm name of "Robert Morey & Co.," and that Robert Morey and Gardner Ball were partners doing business under the firm name of "Morey & Ball"; that on said day said firms borrowed of the First National Bank of Lafayette, Indiana, $5,000, for which said firms made their note, payable ninety days after date with interest at the rate of ten per cent. after maturity, with the appellee as their surety; that said firms, and each of them, failed to pay said note at maturity, and that the appellee, on the 14th day of December, 1878, was compelled to and did pay said note; the principal and interest then amounting to $6,000; that neither of said firms nor any member of them has repaid said money, but that the same, with the interest thereon, is due and remains wholly unpaid.

The second paragraph of the complaint averred the same facts except that it was averred that the money was borrowed by the firm of Robert Morey & Co., and that the firm of Morey & Ball and the appellee executed said note as co-sureties for said first named firm. This complaint was filed on the 14th day of December, 1878, and on the 20th day of the same month the appellee filed a supplemental complaint.

This complaint averred, in substance, that the firm of Robert Morey & Co. was formed on the 1st day of September, 1876, for the purpose of doing a commission business in grain in the city of Lafayette and elsewhere, and at once entered upon the business of buying, selling and shipping grain to distant markets, in which business it is still engaged; that at the time said partnership was formed said Robert Morey and Gardner Ball were doing the same kind of business under the firm name of "Morey & Ball," at a different place in the city of Lafayette, and that they continued said business until the 1st of March, 1878, when they quit business and proceeded to wind up the affairs of said firm; that the firm of Robert Morey & Co. had not more than $3,000 with which to do business, and that the appellee, who is the father of Seneca

Ball, continually aided said firm by endorsing its paper; that said firms borrowed of the First National Bank of Lafayette, Indiana, on the 7th day of August, 1878, $5,000; on the 24th of August, 1878, $5,000; and on September 4th, 1878, $5,000, for each of which sums said firms made notes, with the appellee as surety, payable ninety days from date, with interest at ten per cent. after maturity, with attorney fees and without relief, etc.; that said firms, and each member thereof, failed to pay said notes at maturity, and that the notes given for the first two sums borrowed remain wholly unpaid; that the appellee, as surety of said firms, was compelled to and did pay upon the note given for the last sum borrowed $5,011.10 on the 14th day of December, 1878, and that the same, with interest thereon, is due and remains unpaid; that after the firm of Morey & Ball ceased to do business, its funds to the amount of $15,000 were put in the firm of Robert Morey & Co., and were used by the last named firm as a part of its capital stock, but that said firm gave the firm of Morey & Ball credit for the amount received upon its books, and said firm of Morey & Ball claims to be a creditor of the firm of Robert Morey & Co.; that the assets of said last named firm, consisting of a lot and warehouse thereon in the city of Lafayette, a large amount of grain, mostly in New York, bills receivable and book accounts, do not exceed $23,500, and that the debts of said firm, aside from the claim of Morey & Ball, amount to $21,000; that neither of the defendants has any property subject to execution aside from his interest in the firm of Robert Morey & Co., and that each is insolvent; that Robert Morey and Gardner Ball, with full knowledge that the assets of said firm were not sufficient to pay its debts and to repay Morey & Ball the amount said firm had so advanced, conspired to withdraw from said firm the amount advanced by the firm of Morey & Ball, and for that purpose, on the 23d day of November, 1878, drew out of the First National Bank of Lafayette $1,413.08, deposited in the name of Robert Morey & Co., used $500 of the money and deposited the bal-

ance in said bank in the name of Morey & Ball, and since said date the funds of·Robert Morey & Co. have been deposited in said bank by said Robert Morey and Gardner Ball to the credit of the firm of Morey & Ball, without the knowledge or consent of Seneca Ball; that since November 23d, 1878, said Morey and Gardner Ball have wrongfully appropriated to their own use $5,000 of the money of said firm, $2,500 of which has been appropriated since the institution of this suit; that said Robert Morey has recently threatened and declared that he would sell and dispose of the property of said Robert Morey & Co. as rapidly as possible, and appropriate the same to the use of said Morey & Ball, in repayment of the money put into said firm, and would put and keep the same beyond the reach of the creditors of the firm of Robert Morey & Co., and would, at all hazards, repay to Morey & Ball the amount put by that firm into the firm of Robert Morey & Co.; that on the 18th day of December, 1878, Robert Morey drew $6,000, the money of Robert Morey & Co., but deposited in the name of Morey & Ball, from the ·First National Bank of Lafayette, and with it left for Chicago, for the purpose of selling all the grain and produce of the firm of Robert Morey & Co. in Chicago, and of selling all in New York, with a view of appropriating the money to the use of Morey & Ball, so that it may forever be kept from the creditors of the firm of Robert Morey & Co.; that said Gardner Ball, on the day before, sold 4,600 bushels of corn, the property of said last named firm, for $1,285, and refuses to deposit or to account for the money, but has appropriated it to his own use, with a view of keeping the same from the creditors of said firms; that unless said Robert Morey and Gardner Ball are at once enjoined from disposing of the assets of said firm, or of collecting money belonging to it, or of paying out its funds, the assets of said firm will be speedily converted into money and forever lost to the creditors of said firm, and that an emergency exists to issue a restraining order at once, and without notice, restraining the said persons, and

each of them, from disposing of any of the property of said firm, or of the so-called funds of the firm of Morey & Ball; that it has been agreed by the defendants to wind up the business of the firm of Robert Morey & Co. as soon as the books can be examined and the accounts of the partners determined, and as that is nearly done no harm will result to appoint a receiver, etc.    Wherefore, etc.

This complaint was verified, and as soon as filed Robert Morey and Gardner Ball appeared and filed a demurrer to the supplemental complaint on the ground that the same did not state facts sufficient to constitute a cause of action against them.    The court, without passing upon the demurrer, issued an order restraining Robert Morey and Gardner Ball from disposing of any of the property of said firm, or of any property belonging to them individually, or of any belonging to them as members of the firm of Morey & Ball, until the further order of the court, and the cause was set for hearing on the 26th day of December following.

The next day Robert Morey and Gardner Ball moved the court to modify its order so as not to embrace the property owned by them individually or the property belonging to the firm of Morey & Ball.    The various motions made to thus modify the order were overruled and exceptions were saved. Thereupon the court overruled the demurrer to the supplemental complaint, after which the same was amended by averring that the several acts charged to have been done were done with the intent to defraud the creditors of the firm of Robert Morey & Co., and the several acts threatened were about to be done with like intent, all of which was duly verified.

The appellants thereupon filed an answer of two paragraphs on behalf of Robert Morey & Co.    The first was a general denial, and the second was a set-off.    Thereafter they moved the court to dissolve the injunction generally, which was overruled.    They then moved the court to dissolve the injunction as to the property of the firm of Morey & Ball, and

severally moved the court to dissolve the injunction so far as it affected the individual property of each of them. These motions were overruled, and they appeal, assigning these various rulings as error.

The parties to this record disagree as to the character of the order made by the lower court. The appellants insist that it was a temporary injunction, and contend that it was error to issue it while a demurrer was pending to the complaint. The appellee, on the other hand, contends that it was a restraining order, and that it was proper to issue it without first disposing of the demurrer. This order was the only one ever made in the case, and as the appellee insists that it is still in force, and as the appellants appeal from it as an injunction, we think we must thus regard it. Thus regarded, we think there was no available error in issuing it without first diposing of the demurrer filed. The demurrer in this case was filed to the supplemental complaint. Our statute authorizes such pleading to show facts which occurred after the former complaint was filed. 2 R. S. 1876, p. 83, section 102.

Such supplemental complaint does not supersede the original, but both stand and constitute the complaint.

As such pleading only constitutes a part of the complaint, a demurrer to it is unknown to our practice, and the court was authorized to disregard it. This is what was done, and in this no error was committed.

The appellants do not claim that the court erred in overruling the demurrer, but in granting the injunction before the demurrer was passed upon. If the demurrer had been directed to the entire complaint, it would have presented no question concerning the injunction, as the complaint was unquestionably good for the money due. If good for any purpose, it was sufficient to withstand the demurrer. *Searle* v. *Whipperman*, 79 Ind. 424.

Granting the injunction without passing upon the demurrer, had it been thus directed, would, at least, have been ir-

regular, perhaps erroneous; but, as the demurrer was itself unauthorized, no error was committed in proceeding without passing upon it.

It is next insisted that the court erred in granting and in refusing to dissolve the injunction, on the ground that a general creditor, before judgment, can not enjoin his debtor from disposing of his property. This is the rule in the absence of a statute. High Injunctions, secs. 131, 326.

Our statute, however, provides, among other things, that " where it appears in the complaint, at the commencement of the action, or during the pendency thereof, by affidavit that the defendant threatens, or is about to remove, or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain the removal or disposition of his property." 2 R. S. 1876, p. 93, section 137.

Under this statute, a creditor before judgment may restrain his debtor from disposing of his property. In such case, it must appear that such debtor threatens or is about to dispose of his property with intent to defraud his creditors. This fact, we think, sufficiently appears. It is true that the mere act of selling the property of Robert Morey & Co., and placing the proceeds on deposit in the name of Morey & Ball, in payment of money claimed to be due that firm, does no injury to the creditors of the other firm; nor does the act of Robert Morey and Gardner Ball in retaining the proceeds of such property operate as a fraud upon such creditors, for the reason that the money is still in the hands of the debtors. So long as the appellees' debtors have the money, it is immaterial to the creditors whether they claim it as the money of Morey & Ball or Robert Morey & Co. Both firms were, and each member was, liable for the money due the appellee. If it were averred that Morey & Ball had creditors, or that either member of the firm had creditors, a different question would arise, but as this is not averred it must be assumed that there are no creditors of either class, and hence the money thus held either

Morey *et al. v.* Ball.

belongs to Robert Morey & Co., or to these persons as individuals, and as they are liable to the appellee he is in no wise injured because they claim it as the money of Morey & Ball rather than as the money of Robert Morey & Co. It is, however, averred that they were conspiring together for the purpose of putting this property beyond the reach of the creditors of Robert Morey & Co., and this, if established, was sufficient to warrant the order.

The motion to modify the order so as not to prohibit the appellants from transferring the property of Morey & Ball, or from transferring their individual property, should have been sustained. Nothing was averred in the complaint justifying any such order, and the mere fact that the firm of Morey & Ball, or the members of the firm, may not have any property, as is suggested by the appellees, did not authorize the injunction, nor will the suggestion justify its continuance. The firm of Morey & Ball, and each member of the firm, was liable for the appellee's claim, but this fact alone did not authorize the order; it was necessary that it should also appear that the members of this firm were threatening or were about to dispose of this property fraudulently.

A receiver was appointed, but as no appeal was taken from the order no question arises upon it.

This disposes of the material questions in the record, and as the court erred in refusing to modify the order in the particulars above named, the order in that respect should be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the order in this case be modified so far as not to embrace the firm property of Morey & Ball and the individual property of each member of said firm, at the appellees' costs, and that in all other respects it be affirmed.