### FIRST NAT. BANK OF ANADARKO v. MILLS.

No. 18216.  Opinion Filed Dec. 18, 1928.

Pruett & Wamsley, for plaintiff in error.

Morgan & Morgan, for defendant in error.

BENNETT, C.  The First National Bank of Anadarko filed its petition in district court of Caddo county against W. D. Mills, as surviving partner of the partnership of Mills Brothers, and W. D. Mills, individually, defendant, to recover $6,809.45, represented by a promissory note, and to foreclose a chattel mortgage on a certain grain elevator and hay barn, all considered as personal property, and for an injunction prohibiting W. D. Mills from selling certain property pending litigation.  The petition, in so far as it touches the question in controversy here, is, in substance, as follows:

That Mills Brothers, a partnership, consisting of H. T. Mills and W. D. Mills, for a valuable consideration, did, on November 19, 1925, execute and deliver to plaintiff their certain promissory note for $7,000 and a chattel mortgage securing same, which note was due May 19, 1926, and was indorsed individually by H. T. Mills and W. D. Mills. Copies of the note with indorsements and mortgage were attached to and made part of the petition; that the above mortgage was executed subject to a $3,500 first mortgage on the same property in favor of F. M. Fulkerson.  That the note and mortgage sued on are in default, and that there remains due on the same $6,809.49, with interest thereon at ten per cent. per annum from the 6th day of December, 1926, together with the sum of $700 as attorney's fees; that H. T. Mills died June 26, 1926, and that W. D. Mills, as surviving partner, took possession of all the partnership property of said Mills Brothers, including the property covered by said chattel mortgage; that he has failed to furnish the administrator of the estate of said H. T. Mills a full and correct inventory and a fair and just appraisement of the partnership property

and assets belonging to him and the said deceased partner; that he has disposed of nearly $2,000 of the stock of feed stuff, hay, grain, and seeds belonging to said partnership, and has failed to apply the proceeds of said sale in the settlement of the debts of said partnership, and particularly to that held by plaintiff; that the mortgaged property now in the hands of said W. D. Mills, surviving partner, is not sufficient to pay said first mortgage and the amount due plaintiff, and that there will be a personal liability against the said surviving partner, and as an indorser of said note by reason of the insufficiency of said partnership property; that the said W. D. Mills is about to dispose of his property and with the intent to defraud his creditors, and particularly this plaintiff, and to render any judgment which this plaintiff may recover against him individually ineffectual; that said defendant, individually, is the owner of lot 1, block 33, of the value of $2,500 and of lot 7 in block 36, both in the city of Anadarko, of the value of $5,000; that said defendant has already negotiated for the sale of the lot first described for $2,500, and has notified the purchaser that he should make payment in cash only; that the plaintiff verily believes and alleges the truth to be that the defendant is selling said property for the purpose of getting the proceeds in cash and placing the same beyond the reach of any judgment that plaintiff may recover against him in this action. Wherefore, plaintiff demands judgment for such demand, and also for an injunction against defendant restraining and enjoining him from disposing of his property until the final determination of this suit and until satisfaction of plaintiff, and until plaintiff's claims are satisfied, and for temporary restraining order, etc.

On the 21st day of December, 1926, a temporary injunction was granted according to the prayer of plaintiff's petition, upon filing by plaintiff of an injunction bond in due form in the sum of $1,500. On January 12, 1927, the defendant, W. D. Mills, as surviving member of the partnership of Mills Brothers, and W. D. Mills, individually, filed a demurrer to the petition alleging that the same did not state facts sufficient to constitute a cause of action against the defendant herein in so far as relief by injunction is concerned. On March 10, 1927, the cause came on for hearing upon said demurrer, and upon the motion made by the defendant in open court to dissolve the temporary injunction, and the court sustained the demurrer interposed, "for the reason that the same does not state facts sufficient to constitute a cause of action for injunction, and that the motion to dissolve the temporary injunction heretofore granted in said cause on the 21st day of December, 1926, should be sustained for the same reason." From this judgment the plaintiff appeals to this court for review.

Plaintiff makes two assignments of error, to wit: (1) That the court erred in sustaining the demurrer; and (2) that the court erred in sustaining the motion of defendant to dissolve the temporary injunction. These are treated together in the argument, and they will be so considered here.

The determination of this cause requires an interpretation of section 405, C. O. S. 1921, which is as follows:

"**Cause for Injunction.** When it appears, by the petition, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff; or when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act. **And when, during the pendency of an action, it shall appear, by affidavit, that the defendant threatens, or is about to remove or dispose of his property with intent to defraud his creditors, or to render the judgment ineffectual, a temporary injunction may be granted to restrain such removal or disposition. It may, also, be granted in any case where it is specially authorized by statute.**"

The demurrer admits: (1) That the defendant is indebted to plaintiff by promissory note, which is past due and unpaid in the sum of $6,809.49 with ten per cent. interest thereon, and $700 as attorney's fee; (2) that the note is secured by a chattel mortgage on personal property upon which there exists a prior mortgage for $3,500, and that the mortgaged property is insufficient in value to pay the debts secured by the two mortgages; (3) that the note sued on and secured by the second mortgage aforesaid was made for valuable consideration by Mills Brothers, a partnership consisting of H. T. Mills and W. D. Mills on November 19, 1925, the said partners personally indorsing said note—and thereafter, in June, 1926, H. T. Mills died, and the defendant, W. D. Mills, as surviving partner, took possession of all the partnership property including that covered by the chattel mortgage sued on; (4) that

said W. D. Mills failed to furnish the administrator of the estate of H. T. Mills a correct and fair inventory and appraisement of the partnership property and assets belonging to such copartnership, and thereafter to such partners, but that he disposed of $1,-800 worth of personal property belonging to said partnership at the time of the death of H. T. Mills, and failed to apply the proceeds thereof to the payment of the partnership debts and particularly the debt due plaintiff; (5) that W. D. Mills is about to dispose of his property with the intent to defraud his creditors, and particularly the plaintiff, so as to render any judgment the plaintiff may recover against him individually ineffectual; that the defendant owns in his own name lot 1 in block 33 and lot 7 in block 36 of the total value of $7,500. in the city of Anadarko, and that the defendant has bargained for the sale of the first mentioned lot for $2,500, and has requested that all the purchase money thereof be paid to defendant in cash for the purpose of placing the proceeds thereof beyond the reach of any judgment which plaintiff may recover in this action. These are the essential and material allegations in plaintiff's duly verified petition which stand admitted by the demurrer.

The foregoing section of the statute, it seems clear to us, is readily divisible into two parts. The first part of the section, to wit, that part preceding the words emphasized, seems to afford plaintiff relief against the commission or continuance of some act of defendant during the litigation in violation of plaintiff's rights respecting the subject of the action, such for example, as the commission of waste upon lands sought to be recovered, etc. That part of the section would be effective for the purpose disclosed therein if the part emphasized were entirely stricken out, so complete is the purpose disclosed and so clear is the remedy provided, and the key words to that part of the section evidently are "some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual." On the other hand, the part emphasized deals with another matter, and withal is just as independent of the first part of the section as the first part is of the latter part, and if there existed no first part, all that would be necessary would be to strike out the word "and," and the completeness of this part is sufficiently apparent from quoting the balance, which is as follows:

"When, during the pendency of an action, it shall appear, by affidavit, that the defend-ant threatens or is about to remove or dispose of his property with intent to defraud his creditors, or to render the judgment ineffectual, a temporary injunction may be granted to restrain such removal or disposition. It may, also, be granted in any case where it is specially authorized by statute."

We are familiar with the rule, and the authorities sustaining it, that a creditor whose claim has not been reduced to judgment, and who has neither a general nor special lien on debtor's property, is not entitled to have such property impounded as security for the claim, nor is such creditor entitled to an injunction restraining his debt or from disposing of some or all of his property. This rule is announced in M., K. & T. Tr. Co. v. Richardson (Neb.) 78 N. W 273: Austin v. Bruner (Ill.) 48 N. E. 449; Adler v. Fenton, 24 How. 407, 16 L. Ed. 696, and scores of cases holding to the same effect. In fact, this was one of the elementary rules in equity practice which has met with general acceptance, but that practice has grown up and has been followed where the common law either obtained, or where, under the Codes, no radical change was made. Does our statute above make a substantial change in the law with respect to injunctions? The answer to this question must be based upon the consideration of the terms of the statute, and, in construing the same, we are not warranted, if its terms be clear, in going into the realm of speculation, or of considering the wisdom or lack of wisdom of the act. That has been passed upon and foreclosed by the Legislature. In interpreting the act, certain statutes have been passed for our guidance, the first of which is section 3563, C. O. S. 1921, as follows:

"**Statute Excludes Common Law.** The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice." Bank v. Strahan, 63 Okla. 288, 165 Pac. 189.

Section 3528, C. O. S. 1921:

"**Meaning of Words.** Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears. * * *"

It seems to us that under the plain and ordinary meaning of the words, the remedy provided in the latter part of section 405, C. O. S. 1921, which we have emphasized, is not restricted in its application to injunctive relief against the disposal of property which is the subject of the action. Such relief is

given in terms to a plaintiff who, by affidavit, makes it appear that the defendant threatens, or is about to remove or dispose of, his property with intent to defraud his creditors or to render the judgment ineffectual. In the case at bar there can be no question as to plaintiff being a creditor (12 R. C. L. p. 492); there can be no question as to the verified petition charging the defendant with the fraudulent intent of disposing of his property, not only for the purpose of defrauding his creditors, but also for the purpose of rendering the judgment in the action ineffectual.

There is also the added statement that defendant has disposed of, without properly applying or accounting for, considerable of the assets of an insolvent copartnership, of which he was a member and which copartnership executed the note herein sued on; and that defendant is seeking to dispose of his own property under questionable circumstances.

There is nothing unclear about the meaning of the significant words and phrases of this paragraph taken separately. The word "disposal" has been defined in the case of Popp v. Munger, 131 Okla. 282, 268 Pac. 1100, as a word of broad significance and quoting Webster as follows:

"* * * to exercise control over: * * * to direct or assign for a use; * * * to pass over into the control of some one else; to alienate; to bestow; to part with; to get rid of, as to dispose of a house, or to dispose of one's time."

The phrase "with intent to defraud," finds an excellent interpretation in Chaffe v. Gill, 43 La. Ann. 1054, 10 So. 361, in which it was held that, as the property of the debtor is the common pledge of his creditors, every act done by the debtor with the intent to deprive his creditor of the eventual right he has upon the property of such debtor is illegal. Standard Cotton Seed Oil Co. v. Matheson, 48 La. Ann. 1321, 20 So. 713, 720.

The word "ineffectual" is defined by Mr. Webster as inefficient, ineffecacious, vain, fruitless, unavailing, futile, and one of the synonyms thereof is the word "useless." What could be more fruitless, unavailing, and futile than a judgment against a debtor who has disposed of all his property in fraud to avoid his honest obligations?

Are the words "or is about to remove or dispose of his property with intent to defraud his creditors," which, upon their face, seem to afford a remedy not covered in the first part of the section, merely useless and meaningless words? We think not. These words, taken at face, along with the other part of the paragraph, appear to give the plaintiff the very remedy which he seeks.

The effort necessary to ignore these words, and their apparent meaning, requires a reasoning which is too circuitous, too fine-spun and too technical, and the questionable logic necessary to be used to minimize their force is too attenuated and too fanciful for adoption by our court, whose plain duty it is to uphold the statutes where their intention is reasonably clear, and where their purpose is disclosed by words whose ordinary meaning is fairly well understood. We, of course, owe a very high duty to and respect for the common law, and the wealth of decisions which has marked it out across the years, but this duty does not lead us to the point of ignoring the changes made by the people through their legislators in the laws under which they choose to live.

Our attention is called to the fact that this question has not heretofore been passed upon in this state; in fact, in but few states of the Union, for it must be said that but few states have a statute even similar to the one in question. Our attention has been called to the cases from New York States; Perkins v. Warren, 6 How. Prac. 341; Sebring, Exe'c, v. Lant, 9 How. Prac. 346; Jerome Co. v. Loeb & Co. & Haas, Welch Mfg. Co. v. Loeb & Co. & Haas, 59 How. Prac. 508; Campbell v. Ernest, 64 Hun, 188; Broadfoot v. Miller, 106 Miscl. Rep. 455, 174 N. Y. S. 497. It should be noted that the New York statute is not quite identical with our own. The Legislature of New York divided their corresponding section (604) into two subdivisions, because the first dealt with property "respecting the subject of the action," and the second dealt with "his property," that is, property not the subject of the action. This may be seen by reference to Perkins v. Warren, 6 How. Pr. 341, wherein the court said:

"Where, during the pendency of the action, it shall appear by affidavit that the defendant threatens, or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be issued, under the last clause of section 219 of the Code, to restrain such removal."

In Mott v. Dunn, 10 How. Pr. 225, the court said, in substance, that the demand of the plaintiff is not disputed; it is an ordinary case of goods sold and promissory notes; in other words, a simple money judgment is sought; the suit had not been reduced to judgment, and the court declared:

"There is, moreover, an express provision (the last clause of section 219), which would

seem to warrant a suit embracing the two objects in one proceeding. It declares that 'where, during the pendency of the action, it should appear by affidavit (a sworn complaint is an affidavit), that the defendant threatens, or is about to remove, or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition.' An injunction, as I read it, not only in favor of the judgment creditor, but in favor of any creditor who may be, and in the opinion of the court upon the facts stated, will be injured by the fraud. * * * Upon the whole, my conclusion is that, where the debt is not disputed, and where a preliminary judgment and execution would be of no use, it is competent for the creditor, as the law now stands, in case of fraud or contemplated fraud, to apply at once for injunction."

The case of Peet v. Hatcher, 13 N. Y. Civ. Pro. p. 449, is a suit to recover upon account and motion for restraining order. The court said:

"The application for the injunction * * * is based on sub. 2 of sec. 604 of Code of Civil Procedure. Under that subdivision, an injunction in a proper case would go against specific property, or any property in the hands of the defendant or his agent, but it must be made to appear that the defendant has property upon which an injunction would act."

In the last-named case the property was shown to belong to the wife of defendant, but the court seems to have assumed the application to have been a proper one, if, in fact, the property had belonged to the defendant.

In the Sebring Case, the Jerome Case, the Campbell v. Ernest Case and Broadfoot v. Miller Case, supra, the New York courts, under their statutes, have perhaps committed themselves, upon one ground or another, to the doctrine that the common creditor is not entitled to injunction against the defendant, but we are not sufficiently impressed with their argument to consider them controlling here. In the Sebring Case, supra, the court, in the opinion, says:

"The question of practice raised on this application is one of great importance in a commercial and trading community; and if an injunction can be granted, will entirely subvert the former practice in regard to restraining parties from disposing of their property before judgment. By the former rules of the Court of Chancery, an injunction similar to the one claimed here could not be issued till the plaintiff had not only obtained judgment, but had an execution returned unsatisfied. These rules were founded in wisdom and should not be subverted unless the intention to do so is clearly expressed in the Code. Mr. Justice Parker, in Perkins v. Warren (6 How. Prac. 346), speaking of the section of the Code in question and the power to enjoin a defendant from interfering with, or disposing of, his property, says 'Such an interference, if it could be permitted on a mere claim or indebtedness, would be greatly prejudicial to the commercial interests of the community. It has long been regarded as a cardinal principle, that the legal right of a plaintiff must be established before he can call to his aid the extraordinary power of a court of equity; and a writ of injunction could never be granted where there was doubt about the legal right'."

It will be observed that the two main reasons advanced by the New York court for their holding against allowing the injunction under a somewhat similar statute, are: First, that it would be inexpedient to adopt that rule in a commercial and trading community. In the first place, that presumes to deal with the wisdom or expediency of an act of the Legislature with which, if the language of the act be clear, the courts are not primarily interested. It seems to us to embody another fallacy. The great volume of business in a commercial and trading community is founded upon credit and confidence, and no rule of law or practice which would seem to encourage, recognize or permit the right of a debtor to deliberately dispose of his property (which he perhaps had used as a basis for securing credit), in fraud of his creditors, would seem to add to the stability of business in such a community. Their second reason is that it would subvert the former equity practice. A sufficient answer to this is that our Codes have made many necessary and beneficial changes in procedure and practice, and they will, perhaps, from time to time, make others, and we see no reason for regarding the ancient rules with such reverence that they may not be changed if our legislators find a change necessary or beneficial.

In the case of Campbell v. Ernest, supra, the court intimates that this statute has no application to an action where a money judgment only is sought, and further that to give such statute any other meaning would be a dangerous innovation.

In addition to the New York cases first referred to herein, there may be found in 13 N. Y. Rep., at page 488, the case of Reubens v. Joel. The third paragraph of the syllabus reads as follows:

"Where, during the pendency of an action to recover judgment against the debtor, he threatens or is about to remove or dispose

of his property with intent to defraud his creditors, the court is authorized by section 219 of the Code to restrain him from so doing."

In the body of the opinion the court says:

"The view taken of this provision by Parker, J., in Perkins v. Warren (6 How. Pr. R. 341), is, I think. in the main, just and sound. The plaintiff, to avail himself of it, must show, not that the defendant has made, but that he threatens or is about to make, a fraudulent transfer of his property; and although this be made to appear, yet, if the justice of the claim for which the suit is brought is involved in serious doubt, the court in the exercise of sound discretion, and in view of the well-settled principles which have always governed the exercise of this extraordinary power, should undoubtedly refuse to interpose. The correctness of this interpretation would seem so clear, that were it not that a learned and able justice of the Supreme Court, in the late case of Mott v. Dunn (10 How. Pr. R. 225), came to an opposite conclusion, I should deem it unnecessary to go farther."

From an examination of the cases from New York just cited, it will be seen that the holdings of the courts of that state have not always been entirely uniform. Some of these cases have been criticized and others have been overruled, but assuredly they are now recognized as favoring the rule contended for by the defendant.

In the case of Morey v. Ball, 90 Ind. 450, the opposite rule, and, to our minds, the one more in keeping with a proper construction of the statute, is promulgated. The court in the opinion says:

"It is next insisted that the court erred in granting and in refusing to dissolve the injunction, on the ground that a general creditor, before judgment, cannot enjoin his debtor from disposal of his property. This is the rule in the absence of a statute. High on Injunction, secs. 131-326. Our statute however, provides among other things that: 'Where it appears in the complaint. at the commencement of the action, or during the pendency thereof, by affidavit, that the defendant threatens, or is about to remove, or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain the removal or disposition of his property' (2 R. S. 1876, p. 93, sec. 137)."

"Under this statute, a creditor before judgment may restrain his debtor from disposing of his property. In such a case it must appear such debtor threatens, or is about to dispose of, his property with intent to defraud his creditors. This fact we think sufficiently appears."

As we read it, the statute in Oklahoma is even more comprehensive than either the New York or the Indiana statute. The New York statute use the words "with intent to defraud the plaintiff." The Indiana statute says, "with intent to defraud his creditors." The Oklahoma statute uses the words "with intent to defraud his creditors, by or to render the judgment ineffectual."

In the case of Montana Mining Co., Ltd., v. St. Louis Min. & Mill. Co. of Montana, 168 Fed. 514, Circuit Judge Morrow says:

"It is contended by the appellant that the restraining order entered in this case was granted by the court without authority. Section 871 of the Code of Civil Procedure of 1895 of Montana (Rev. Codes, sec. 6643) provides, among other things: 'When it appears, by affidavit, that the defendant, during the pendency of the action, threatens, or is about to remove or to dispose of his property, with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition.' Without entering into a discussion concerning the construction placed upon a similar provision in the New York Code of Procedure, it is sufficient to say that we are satisfied that the statute authorizes a restraining order under circumstances such as are presented in this case. (Citing High on Injunctions, sec. 1407; Morey v. Ball, 90 Ind. 450; Lee v. Gross, 126 Ind. 102, 25 N. E. 891; Reubens v. Joel, 13 N. Y. 488.)"

Kansas has a statute similar to Oklahoma, but we have not been able to find and we are not referred to any decisive case from that jurisdiction.

In Field v. Holzman, 93 Ind. 205, the last syllabus is as follows:

"Under the code creditors may unite in a suit to enjoin a debtor from fraudulently disposing of his property, although their claims are several and not in judgment." (Citing Hyde v. Ellery, 18 Md. 496).

Bigelow, on Fraudulent Conveyances, p. 156, says:

"But even in case of a creditors' bill, a distinction has been made between a mere voluntary conveyance and one characterized by actual fraud. In these latter it has been sometimes held allowable without the return of execution nulla bona or proof that debtor has no other property." (Citing Hughes v. Noyes, 171 Ill. 575, 49 N. E. 703; also citing cases from Mississippi, South Carolina, West Virginia and Iowa.)

In 27 C. J. p. 864, par. 841, the text says:

"In some jurisdictions, by reason of express statutory provision, an injunction may issue where, during the pendency of an action. defendant therein threatens, or is about to dispose of, his property with intent to defraud his creditors." (Citing Morey v. Ball, supra; Trotter v. White, 18 Miss. 607;

Reubens v. Joel, 13 N. Y. 488; Mitchell v. Bettman, 25 Barb. 408; Brewster v. Hodges, 8 N. Y. Supr. 609; Perkins v. Warren, 6 How. Pr. 341; Pomeroy v. Hindmarsh, 5 How. Pr. 437; Holliday v. Hodge, 84 S. C. 109, 65 S. E. 1019; Pelzer v. Hughes, 27 S. C. 408, 3 S. E. 781; Orr v. Moore, 1 Tex. A. Civ. Cases, 587; Fairchild v. Ealmslie, 2 Alta. Law, 115.)

The same authority (C. J.), same paragraph, states further:

"The right to such injunction depends on the fact of pendency of the action, the fact that defendant threatens, or is about to dispose of the property and the existence of fraudulent intent." (Citing several N. Y. cases). "The remedy is applicable only where the act is threatened or about to be done, not where it has been done."

And under note 46 appears the following:

"Under such a statute a general creditor before judgment may enjoin his debtor from disposing of his property." (Citing Morey v. Ball, supra, and Mitchell v. Bettman, supra.)

"It is not necessary that the amount of plaintiff's rights be established." Marston v. Durgin, 54 N. H. 347.

"In some states, it is provided by statute that an injunction may issue to restrain the removal or disposition of property when, during the pendency of the action in which judgment is about to be recovered the defendant threatens or manifests an intent to dispose of his property with the intent to defraud his creditors or place it beyond execution." Moore on Fraudulent Conveyances, vol, 2. p. 1042.

It is significant, it seems to us, that in the Oklahoma statute, last paragraph, the words "his property," as contradistinguished from the words in the first part of the section, "respecting the subject of the action" are used. Such words would have been out of place and unnecessary if it had been intended simply to restrain the disposition of the subject of the action. Defendant claims that the adoption of this rule will be revolutionary in practice and procedure in this state. Perhaps the words are a little strong. Even now, we have a statute providing for the attachment of property where a defendant is about to dispose of it for the purpose of hiding it from his creditors, and under which the property is actually taken from him by the law, and the owner loses the use of the same until the lawsuit is settled. But under the provisions of the act under discussion the debtor is simply required to maintain the present status until the final determination of the suit. He is allowed to use his property in every way other than its disposition. It is true that

men have the right to use and dispose of their property at will in a very general sense. Under the old law, a creditor must first get judgment and then issue execution before being allowed the extraordinary remedy. Even under this statute, the granting of an injunction is not mandatory, but it is to be issued within the sound judicial discretion of the judge, not for the purpose of oppression, nor to hinder legitimate business, but only for the purpose of preventing fraud. Somehow, we are not deeply impressed with the idea that a debtor has any such inherent right to fraudulently dispose of his property to the hurt of those who have succored him financially as would make it necessary to employ a strained construction of a clear statute in order that he may the better escape his obligations.

It will, of course, be borne in mind that this is an application to a court of equity. No answer has been filed denying the intended fraud or justifying the action of the defendant in the premises, but he makes his assault upon the injunction granted by admitting the very damaging allegation set out in the petition, including not only what might be inferred to be a corrupt handling of partnership assets, but also the intent and purpose to get rid of his property to defraud his creditors. To say the least of it, the defendant has not chosen very high ground for his attack. One who comes into a court of equity should come at least with his hands decently clean. To ask the court to vacate the injunctive order and in the same breath admit that he would make use of the opportunity to sell all of his property in fraud of his creditors is not impressive. His motion to vacate on the same ground has no more to commend it.

We are not deciding in this case that the court, upon hearing the facts, should continue the order, but in considering the matter from the angle of the pleadings as they now stand, we do not favor the defendant's contention.

It might be argued that since the plaintiff had a right to attach, injunctive relief should not be given. We do not think this sound. We can easily conceive of cases in which attachment might be of doubtful availability. The attachment rule is that the plaintiff must give bond in double the amount of his claim. The plaintiff's claim might be very large, but the amount of the property about to be disposed of might be of small value, and the average man might find it impossible to make the bond. Further, an attachment bond is a dangerous bond, for under it the possession of the property is

taken, whereas, under injunction possession of the property is not disturbed.

We have discussed the only point raised or argued in the briefs and the one which is conceded to be decisive of this case. We hold, therefore, that the statute means exactly what it says, and that upon a proper showing by the plaintiff that the defendant is about to dispose of his property in fraud of his creditors, or to render worthless any judgment sought against him by a creditor, that such creditor is entitled, under the statute, to relief by injunction within the discretion of the court.

For the reasons given, we hold that the sustaining of the demurrer and the vacation of the temporary injunction by the trial court was error, and for which reason the cause is reversed and remanded to the trial court, with directions to proceed in conformity with the law herein announced.

REID, HERR, JEFFREY, DIFFENDAFFER, and TEEHEE, Commissioners, concur.

By the Court: It is so ordered.